## The People of the State of Illinois, Defendant in Error, v. Oliver F. Paisley, James T. Paisley and William H. Paisley, Plaintiffs in Error.

### Gen. No. 26,277.

1. CRIMINAL LAW, § 460*—*when indictment will not be considered on appeal.* Where an indictment is not abstracted, the court will not upon appeal pass upon it or examine the record to reverse for any infirmity in it.

2. CRIMINAL LAW, § 69*—*when prosecution suspends limitation period.* The limitation for prosecution by indictment or otherwise for misdemeanors is satisfied when the indictment is returned within the period of the limitation without regard to the time of trial.

3. CRIMINAL LAW, § 200*—*when separate trials are proper.* The granting of motions for separate trials, where defendants were all charged with the same grade of offense growing out of the business of banking jointly conducted by them, was within the sound discretion of the court.

4. CRIMINAL LAW, § 75*—*what constitutes former jeopardy.* Where the statute makes the receipt of each deposit after insolvency a separate offense, a former trial involving another deposit distinct from the one in question, but made after the same insolvency, does not constitute former jeopardy.

5. BANKS AND BANKING, § 64*—*when deposits are assumed to be in currency.* In the absence of proof the court will not assume that a deposit in a bank was not currency in United States money.

6. BANKS AND BANKING, § 64*—*what shows knowledge of insolvency.* A bank examiner's testimony as to conversations with defendant bankers, in which he told them that from the statements furnished to him by them they were insolvent, was competent to show knowledge by defendants of their financial condition.

7. BANKS AND BANKING, § 64*—*what evidence is proper to show knowledge of insolvency.* Evidence that defendant banker told his cashier not to pay a draft brought in for collection until a certain date, as he was not expecting the money until that time, for the reason that he "needed the money" was admissible to show that the defendant was cognizant of his financial condition.

8. BANKS AND BANKING, § 64*—*what evidence is proper to show knowledge of insolvency.* Testimony of the cashier concerning a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

financial statement of the assets and liabilities of defendants' bank to a prospective depositor, made at the direction of one of the defendants, and that the statement was false, making the bank appear solvent, was admissible to show knowledge of defendants regarding their financial condition.

9. CRIMINAL LAW, § 131*—*when testimony is incompetent.* The testimony of a witness given upon a former trial was inadmissible where the witness was alive but absent from the State.

10. CRIMINAL LAW, § 239*—*what may be read by counsel in argument.* Counsel may read to the jury extracts from opinions reported in cases bearing upon the law in the case, but not facts in the opinions.

11. CRIMINAL LAW, § 250*—*when instructed verdict is erroneous.* An instructed verdict for defendants in a criminal case was properly denied as the jury in such cases are the judges of both law and fact.

12. BANKS AND BANKING, § 64*—*when variance does not exist in proof.* Where a deposit made by "Elsa Koch" appeared on the books of the bank under the name of "Elsa Kock," the doctrine of *idem sonans* was a sufficient curative for the discrepancy.

Error to the Criminal Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed February 19, 1921. Rehearing denied February 28, 1921.

MARSHALL SOLBERG and WILLIAM FRIEDMAN, for plaintiffs in error; COLIN C. H. FYFFE, of counsel.

MACLAY HOYNE, EDWIN J. RABER, EDWARD E. WILSON and JOHN OWEN, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The defendants were indicted under three counts by the grand jury of Cook county, October 7, 1916, in each of which counts they are charged with receiving as bankers from Elsa Koch, who was not then indebted to them, on September 19, 1916, the sum of $90 as a deposit when they were insolvent and had knowledge of their insolvency, which deposit was lost

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to the depositor. These acts were charged to be in violation of the statutes of this State.

Defendants upon a trial were all found guilty by the verdict of the jury and under said verdict were sentenced to pay a fine of $180 each; in addition thereto defendants Oliver F. Paisley and James T. Paisley were sentenced to serve an indeterminate term in the penitentiary, in accord with the statute. In an endeavor to reverse these judgments defendants have sued out this writ of error.

This indictment arises out of the failure of three banks operated by defendants in Chicago. Several other indictments have been returned against defendants for receiving deposits while the banks were to their knowledge insolvent. One of them was returned January 8, 1917, and involved a deposit of $700 made by one Margaret Basch September 16, 1916, three days prior to the deposit by Elsa Koch. There was a conviction and a review thereof by this and the Supreme Court. Many of the salient and most pertinent features in the case at bar were likewise involved in these reviews, in which also the law of the case as then presented was determined by the Supreme Court. Without repeating these matters we refer to *People v. Paisley*, 288 Ill. 310, and 209 Ill. App. 295.

The indictment is in all essential particulars the same as in *People v. Paisley, supra,* which the Supreme Court held to be sufficient. If it were not so, judicially we are not permitted, as the indictment is not abstracted, to pass upon it or examine the record to reverse for any infirmity in it, if such there be. *People v. Yuskauskas,* 268 Ill. 328. In the *Paisley* case, *supra,* it was held that the word "feloniously" in the indictment, which was for a misdemeanor, as in the instant case, might be regarded as surplusage. Aside from the sufficiency of the indictment the *Paisley* case, *supra,* settled the law in several matters involved in this case and is conclusive of some of the contentions again argued for reversal.

It was settled *inter alia* that banking copartners could be indicted as individuals for unlawfully receiving deposits while insolvent; that an averment that they were partners is not tantamount to charging the crime against a partnership; that banking partners may be jointly guilty of receiving deposits while insolvent, and that such a crime is not such as only one person may commit but one which may be committed by two or more persons as partners or as individuals acting jointly; that books kept by bankers may be introduced against them on a charge of receiving deposits while insolvent, and that so doing is not compelling them to give evidence against themselves.

It was held reversible error to allow proof that defendants had committed other acts of embezzlement or other crimes not connected with the commission of the crime charged; that witnesses, however competent and well qualified so to do, must not express opinions that defendants were insolvent when deposits were received, notwithstanding such witnesses may have been fully informed as to the value of all assets of the bank and all other matters necessary on which to base an opinion as to solvency; that depositors should not be permitted to testify that they lost their deposits, but such testimony should be restricted to showing that debts were due them from defendants, and also that where there is evidence tending to show that the defendants had been compelled by threats to surrender certain shares of stock of value, without consideration, they were entitled to have the jury instructed that in considering the question of insolvency they should take into consideration the value of such surrendered stock in determining the value of the assets of defendants.

Without reciting the evidential facts in the record, suffice it to say that a thorough examination of the evidence fails to disclose that any of the errors for which the cause *supra* was reversed are present in the

record before us. Such errors were, we think, successfully avoided in the last trial. Furthermore, we think that the jury might reasonably find from the proofs before them that the defendants' banks were insolvent; that they were insolvent at the time the deposit was received from Elsa Koch September 19, 1916, and that defendants knew they were insolvent.

It is also argued for reversal that as the cause was not tried before the expiration of the time in the limitation statute, such statute had expired. To this we cannot yield assent. The limitation for prosecutions by indictment or otherwise for misdemeanors is satisfied when the indictment is returned within the period of the limitation without regard to the time of the trial. If it were not so, a guilty defendant might escape punishment by the simple ruse of obtaining continuances of his trial until the statutory period had elapsed.

It is also argued for reversal that the trial court abused its discretion in denying motions of defendants for separate trials; and defendants likewise argue and assign for error that the court abused its judicial discretion in refusing to consolidate this case with several cases of misdemeanor said to be pending in the criminal court against these defendants, involving the same subject-matter. These motions are, to say the least, inconsistent. However, the granting of them was a matter which rested within the sound discretion of the court. These defendants were all charged with the same grade of offense growing out of the business of banking jointly conducted by them. It would have been impracticable to have had three trials when one only was necessary. The consolidation of indictments for trial is an unheard of proceeding, justified by neither precedent nor practice.

Again, it is argued that the trial of the former case—288 Ill. 310—involving the Margaret Basch deposit of $700, September 16, 1916, constitutes former

jeopardy of defendants, which works a bar to the trial of the instant case.. Former jeopardy was provable under the plea of not guilty; therefore we are not restricted to an examination of the so-called plea of former jeopardy in determining the right of defendants to avail of that defense. This right proceeds upon the theory that there can be but one conviction for the receipt of deposits ·after insolvency; that the receipt of each deposit is not a separate offense. It · seems quite plain that the .statute makes the receipt of each deposit in the circumstances of insolvency a distinct offense and punishable as such. This we think is clear from the penalty to be adjudged for each offense, which the statute provides shall be a fine of double the amount of the deposit received and fraudulently taken.'. The fine is mandatory and the amount of the deposit governs each case; imprisonment is optional. In the Basch case the fine was $1,400, the deposit being $700. In the instant Koch case the deposit was $90 and the fine is $180—in each case the fine being double the amount of the deposit. The defense of former jeopardy was not available to defendants.

We observe no variance between the indictment and the proofs. We are not at liberty, in the absence of proof of such fact, to assume that Elsa Koch's deposit of $90 was in federal reserve notes; and, if it were, we are not prepared to hold that such notes are not currency in United States money. Furthermore, as the indictment is not abstracted we will not go to the record to ascertain whether it is variant from the proofs.

Certain rulings of the court on the evidence are challenged. They relate to Bank Examiner Harkins' testimony. The books of defendants were offered and received in evidence, from which, with the other proofs, the jury could determine the question of solvency. The evidence of Harkins, which was held erroneous in the *Paisley* case, *supra,* was not repeated on. the

trial of this case. It is contended that this witness
orally testified as to the contents of certain financial
statements which defendants made and that he also
gave an opinion as to the insolvency of defendants.
A scrutiny of the record fails to divulge any such testi-
mony. In testifying he did not give his opinion as to
the insolvency of defendants. He did, however, tes-
tify as to conversations with defendants, in which he
told them that from the statements furnished to him
by them, they were insolvent. This evidence was com-
petent to show knowledge by defendants of their finan-
cial condition, from which the jury might, with the
other proofs, determine whether defendants were
knowingly insolvent at the time of receiving the Koch
deposit. Certain notes given to depositors were of-
fered in evidence. They contained recitations showing
that the payees were depositors and that the notes
were promises to pay such depositors. These notes
were admitted for the restricted purpose of showing
that the defendants were partners, and on objection
this was not only so stated, but the court in its rulings
limited their admission to that purpose only, which
ruling of the court we think was proper.

The so-called "Anderson transaction" is challenged.
We think the proofs are shorn of the objection found
by the Supreme Court in the *Paisley* case, *supra*.
The facts put in evidence were the bringing in by
Anderson of the draft for collection; that it was sub-
sequently collected, and that the defendant, Oliver F.
Paisley, told the cashier not to pay Anderson the
money when he came in for it, but to hold it until
January 1, as he was not expecting it until that time,
for the reason that defendants "needed the money."
In case *supra* this transaction was proven in such
"*minutio* and detail" as to attempt to prove the of-
fense of embezzlement. This the Supreme Court con-
demned. It was not proven that Anderson lost his
money or that the cashier carried out Paisley's direc-

tions by failing to pay him.  It was not proven that
Anderson came to get his money.  The evidence did
tend to show that the defendant, Oliver F. Paisley, was
cognizant of his financial condition at that time.  This
we think was permissible.

It is next complained that the cashier was allowed
to testify concerning a financial statement of the as-
sets and liabilities of the North Shore Bank, made
at the direction of the defendant, Oliver F. Paisley,
June 10, 1916, and that the statement was false, as
shown by the books, making the bank appear solvent
when in fact it was insolvent.  While it does not
clearly appear from the brief of defendants what this
testimony, particularly referred to in the *Paisley case,
supra,* was, it does appear that it had reference to a
request for a statement by the Western Union Tele-
graph Company, which desired it for the purpose of
judging whether it was safe for it to deposit some
of its money with the bank.  In case *supra* there was
proof of embezzlement, but not so in the case before
us, as there is no proof in the record that the West-
ern Union Company asked for the statement or·that
the defendants received a deposit from the Western
Union Company or that the company lost any money
by reason of the false statement.  The purpose of the
admission of such statement was to prove the knowl-
edge of defendants regarding their financial condition,
and for this purpose it was properly admitted.

There was admitted in evidence a bill filed by Oliver
F. Paisley against James T. and William H. Paisley
to wind up the partnership existing between the de-
fendants and for the appointment of a receiver.  It
was proven that the receiver was appointed by agree-
ment of the parties.  There was ample proof that the
bill was filed-and the receiver appointed with the con-
sent and·approval of all the defendants.

Defendants sought to read in evidence testimony
of Arista B. Williams given on a former trial, which

the court on objection refused. Williams was alive but absent from the State. There was no error in this ruling. The testimony of Williams given upon a former trial was not admissible. *Brown v. People,* 145 Ill. App. 263. Furthermore, we are unable to find in the abstract any reference to what defendants expected to prove by the reading of Williams' former testimony. In the absence of such information we cannot say that defendants were prejudiced by the court's ruling.

It seems that counsel for defendants endeavored to read to the jury the *Paisley* case, *supra.* This the court, on objection, declined to allow, and this ruling is assigned for error. It was not proper for counsel to read the facts of the *Paisley* case, *supra,* to the jury. The law of the case they might have read, for, as said in *People v. Rees,* 268 Ill. 585: "The general rule is that counsel may read extracts from opinions reported in cases bearing upon the law in the case, but not the facts in the opinions." *People v. Zurek,* 277 Ill. 621. As counsel sought to read the the facts of the case instead of the law, the ruling thereon was correct.

Again, the court's denial of defendants' motion to instruct a verdict for defendants is argued for error. In this jurisdiction the juries are the judges in criminal cases of both law and fact, and the whole case was therefore properly submitted to the jury without a direction.

It is claimed that no account appears on the books of defendant in the name of Elsa Koch. It does appear that there is an account showing the deposit of $90 in the name of "Elsa Kock." We think the doctrine of *idem sonans* is a sufficient curative.

It is complained that the prosecuting attorney made improper and inflammatory remarks in his argument to the jury. We have searched the record for such but do not find them.

Defendants complain of numerous instructions given and refused. The jury were fully instructed on the law of the case, and taking the instructions as a whole, which the law requires, we think the jury were sufficiently instructed on every material point of law involved in the evidence before them. While each instruction may not have been exact in every particular, still there was no misstatement of the law in any of those complained about, and the instructions of defendants refused were, in view of the instructions given at their instance, properly refused. We find no error in the instructions justifying a reversal.

The proofs in the record are abundant to sustain the verdict of the jury, and we find no reversible error in procedure; therefore the judgment of the criminal court is affirmed.

*Affirmed.*

DEVER and McSURELY, JJ., concur.