ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* GIBSON.

Opinion delivered June 15, 1914.

1. EVIDENCE—BEST EVIDENCE.—The object and purpose of legal investigation is to ascertain the truth, and the best evidence attainable should be offered. The testimony of witnesses must be confined to that which is within their personal knowledge, and hearsay evidence must be excluded. (Page 424.)

2. EVIDENCE—HEARSAY—ADMISSIBILITY.—The admission of hearsay testimony may be rendered proper by the difficulty of obtaining other proof and owing to the peculiar circumstances under which the declarations were made. (Page 424.)

3. EVIDENCE—HEARSAY—ADMISSIBILITY.—For hearsay testimony to be admissible the declaration must be made before disputes or litigation arise, so that it is made without bias on account of the existence of a dispute or litigation which the declarant might be disposed to favor, and the declarant must have had peculiar means of knowledge not possessed by others. (Page 424.)

4. EVIDENCE—BEST EVIDENCE—HEARSAY.—In an action for damages for wrongful death caused by the operation of a railroad train, defendant sought to prove when the train left a certain station by the testimony of the operator at another station, to whom the information was telegraphed by the operator at the station in question. *Held*, the testimony was inadmissible as hearsay, and because the operator who sent the message could be summoned as a witness and his testimony would be the best evidence. (Page 426.)

5. RAILROADS—INJURY TO TRESPASSER—DUTY TO MAINTAIN LOOKOUT.— Where proof has been introduced by the plaintiff of an injury caused by the operation of a train under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided if a lookout had been kept, then the burden is shifted to the railway company to show that such lookout was kept. (Page 428.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellee sued appellant to recover damages for the wrongful death of her husband, O. E. Gibson. This is the second appeal in the case, and the opinion on the first appeal is reported in 107 Ark. 431, under the style of *St. Louis, I. M. & S. Ry. Co.* v. *Gibson.* The facts, as proved by the appellee, are substantially as follows:

O. E. Gibson was seen sitting on the cross-ties on appellant's line of railway, a short distance south of Hope, on the afternoon of January 27, 1912. About twenty-five minutes thereafter he was run over and killed by a fast northbound passenger train consisting of an engine and eight cars. The track south of where Gibson was killed was perfectly straight for two miles, and a person stand-

ing on the track 1,350 feet from where he was killed could see a man lying on the track at that point. Gibson was killed some time between 5 and 6 o'clock in the afternoon. Some of appellee's witnesses say that it was between sundown and dark, and others say it was nearly dusk. Most of them say that it was light enough for him to have been seen at a distance of 1,350 feet. The electric headlight on the engine was burning, but no bell was ringing or whistle sounded before the train struck decedent. Gibson had been drinking some during the day, but several of appellee's witnesses testified that he was not drunk. One of them stated that he had talked with Gibson about 4:30 o'clock in the afternoon on that day, and that he was perfectly sober at that time.

On behalf of the railway company, the engineer and fireman of the train that ran over decedent, testified that they were keeping a lookout; that they first noticed an object on the track about 500 feet distant, but supposed it was a tie thrown down by the track by the section hands while repairing it; that when they got within 150 or 200 feet of the object, they discovered it was a man; that the engineer immediately applied the brakes in emergency and stopped the train as quickly as he could; that the engine was pulling eight cars that day, and that the train ran five or six hundred feet after the emergency brake was applied before it could be stopped; that it ran the length of the train beyond where the man was struck; that each of the eight cars was sixty-two feet long, and that the engine was seventy feet in length; that the train was behind the schedule time, and that it was running at the rate of thirty-eight or forty miles an hour when the emergency brake was applied; that the bell was ringing at the time; that the accident occurred at 5:33 p. m.; that the train was delayed about ten minutes on account of the accident, and that it stopped at the station of Hope three or four or five minutes.

Other evidence adduced by the appellant, by expert witnesses, tended to show that the train could not have been stopped in a shorter distance than that testified to by the engineer and fireman. Evidence was also adduced

by appellant tending to show that decedent was very drunk on the night before he was killed, and had been drinking heavily on that day.

The jury returned a verdict in favor of appellee; and to reverse the judgment rendered, appellant prosecutes this appeal. Other evidence will be referred to in the opinion.

*E. B. Kinsworthy, R. E. Wiley* and *T. D. Crawford,* for appellant.

1. The rejected portion of Whitworth's testimony was competent and material as tending to show when the accident occurred. It was based upon a book of original entries kept by him and was admissible as such. 108 Mo. 277; 111 Mo. 205; 160 Ill. 101; 72 Mo. App. 534; 2 Enc. of Ev. 626; 63 Ark. 562; 130 Mich. 449; 158 Mass. 450, 33 N. E. 583; 103 Ark. 153; 27 Wash. 169, 56 L. R. A. 772; 122 Ky. 269, 3 L. R. A. (N. S.) 1194; 138 N. C. 42, 107 Am. St. 500; 36 L. R. A. 693, 100 Ia. 204; 24 Okla. 691; 68 W .Va. 506; 7 Tex. Civ. App. 169; 42 *Id.* 85; 191 Fed. 720; 169 Ala. 389; 203 Fed. 407; 108 Minn. 470; 138 N. C. 42; 74 Mich. 713; 39 O. St. 327.

2. According to the holding of this court on former appeal, a *prima facie* case is not made, and the burden is not shifted to the railway company to show the keeping of a lookout, until proof has been introduced of the injury to a person by the operation of a train under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided if a lookout had been kept: 107 Ark. 431, citing 151 S. W. 246.

*Steve Carrigan, Jr.,* and *Mehaffy, Reid & Mehaffy,* for appellee.

1. The rejected testimony of Whitworth's was not only not prejudicial, but proper.

It was wholly immaterial as tending to prove the speed of the train, because, while a calculation might be made from the time the train cleared the blocks, and the time the accident occurred, which would show the *average* speed of the train, it would show nothing further, it

would not show the speed of the train, whether it was
going fast or slow, at the time of the accident.  If the
evidence was immaterial or incompetent, its exclusion
was not only harmless, but proper.

Before such testimony would be admissible, there
must be either a statute authorizing its introduction, or
it must be shown that it was a contemporaneous act and
a part of the *res gestae*.  There is no statute authorizing
it, and there is not only no showing that the act was con-
temporaneous and a part of the *res gestae,* but the facts
in the case negative that idea.

Finally, it is a well known rule that parties who make
entries, telegraph them in or communicate them in any
way, are the proper witnesses of those facts, and must
be called to testify in relation thereto.  This case was
tried in the county in which Hope is situated.  Appellant's
operator at that place should have been called to testify
to these facts.

2.  Instruction 4 is correct.  However, if the clause
therein complained of was open to objection, it should
have been pointed out by specific, not a general, objec-
tion.  81 Ark. 187; 66 Ark. 264; 70 Ark. 563; 74 Ark. 355.

Where the whole charge to the jury is more favorable
to the complaining party than he is entitled to, and when
the judgment is right upon the testimony, it will not be
reversed for the giving of an erroneous instruction.  89
Ark. 154; 92 Ark. 392; *Id.* 6; 99 Ark. 226; 103 Ark. 352;
98 Ark. 259; 101 Ark. 34; 93 Ark. 457; *Id.* 589; 90
Ark. 524.

HART, J., (after stating the facts).  The principal
question raised by the appeal is whether the court erred
in rejecting certain testimony of one Whitworth, who was
appellant's station agent and telegraph operator at Ful-
ton on January 27, 1912, the day Gibson was killed.

The railroad was operated by what was called the
"block system."  Whitworth testified that he kept a rec-
ord of the movements of the trains on the block south of
Fulton and the one north of it; that the block south of
Fulton was from Clear Lake Junction to Fulton, and that
the block north of Fulton was from Fulton to Hope; that

his records show that the train which killed decedent entered the block south of Fulton at 5:03 p. m. on January 27, 1912; that it passed Fulton at 5:17 p. m.; that it cleared the block at Hope at 5:50 p. m., and that this information was given him by the operator at Hope; that when a train passed Fulton going northward, no other train would be permitted to enter that block until after it had been reported to him that the first train had cleared the block; that these records were kept by him to show the movements of the train in order that a train might not enter one block until the train ahead of it had passed out of that block.

Counsel for appellee objected to the testimony of this witness to the effect that the train cleared the block at Hope at 5:50 p. m., and the court sustained the objection of counsel thereto. Counsel for appellant contend that the testimony was competent and material because it tended to show when the accident occurred. Other testimony introduced by appellant tended to show that Hope was thirteen and one-half miles north of Fulton, and that the train ran from Fulton to Hope at the rate of about thirty-eight or forty miles an hour.

To sustain their contention, counsel for appellant rely on the cases of *Donovan* v. *Boston & Maine Rd. Co.,* 158 Mass. 450, 33 N. E. 583, and *Louisville & Nashville Ry. Co.* v. *Daniel,* 122 Ky. 269, 3 L. R. A. (N. S.) 1194, and other cases of like character.

In the first mentioned case, plaintiff sued the railroad company for injuries received at a crossing, and his evidence was that he was injured near the station at a designated time by an incoming train, and that his view of the train was obstructed by another train which was delivering passengers at the station. To show that no train was delivering passengers there at that time, defendant introduced in evidence the entries on a telegraphic train report sheet kept in its train dispatcher's office at that station, showing the time all trains passed the several stations enroute, and the court held that the evidence was

competent. The train dispatcher made the record from reports sent him by the operators at the various stations along the line of railroad, and his testimony was objected to on the ground that the testimony of the operators who sent in the reports would be the best evidence. The court said that every interest of the railway company demanded that the entries, when made, should be true, and that no reason could be conceived why the defendant should procure or permit a false or incorrect entry of the movement of its trains; that there was no reason why the operators who sent in the information could have any interest to misstate the facts; that the record made by the train dispatcher from the information sent in by the operator was an act rather than a declaration; that the train sheet, with its entries, and the messages from which they were made, were acts done before any controversy had arisen, when all concerned had no interest except to know and to state the truth.

In the last mentioned case, according to the testimony of the plaintiff, he rode to the station where he was injured on one of defendant's trains by permission, and after he had debarked from the train he saw another engine coming down the track, and after it had passed he undertook to cross the track and was hit by a car making a flying switch. It was the theory of the railway company that the plaintiff was stealing a ride on the train from which he debarked, and that there was no other engine at that station at the time. Defendant offered to prove by its train dispatcher that he kept an accurate record of the movements of all trains on that division of its road, and that this record was made up from his own orders, upon which all trains on that division moved, and from telegraphic reports transmitted to him from the stations along the line as each train arrived and departed. The court said that in the conduct of a modern railroad system it is indispensable that in the movement of trains an exact knowledge should be had at a central point of observation and direction of the location of each train in operation over a given line, or between given

terminals, and that this knowledge should accompany each movement of each train until it had arrived at its destination; that in order to avoid collision it was necessary that the train dispatcher who directed the movements of the train over his division should maintain, as it were, a bird's eye view of the whole system under his control; that he could only do this by receiving telegraphic reports from the operators along the line, and that the conditions under which these reports were made, and the grave importance of them, are the strongest possible guaranty to their accuracy; that the record was made up of details furnished by persons widely apart and all acting under a high incentive for accuracy; that under these circumstances no motive exists for the various operators to knowingly make a false report, and that the reports are made under such circumstances that the person making them has no interest or incentive whatever to fabricate them.

We do not think the rules announced in the two cases just referred to are applicable to the facts of the present case. Always the object and purpose of legal investigation is to ascertain the truth, and in doing this the best evidence attainable should be offered. The general rule is that witnesses, in testifying, must be confined to that which is within their personal knowledge, and that which is but hearsay must be excluded. 1 Greenleaf on Evidence (16 ed.), § 98; 1 Elliott on Evidence, § § 315-320. These learned authors, as well as the adjudicated cases, recognize certain exceptions to the general rule. One of the grounds is that hearsay evidence is sometimes rendered necessary by the difficulty of obtaining other proof, and owing to the peculiar circumstances under which the declarations were made, there is a guaranty of their reliability because the declarant was disinterested, and there was no motive for him not to speak the truth. Then, too, the declaration must be made before dispute or litigation so that it is made without bias on account of the existence of a dispute or litigation which the declarant might be disposed to favor. Lastly, the declarant must

have had peculiar means of knowledge not possessed by others. *Sugden et al.* v. *St. Leonard,* 1 Law Rep. (English) Probate Division (1875, 1876), page 154, at 241.

The facts of the present case do not bring the excluded evidence within these exceptions. It will be remembered that the excluded evidence was the report of the time the train left the block at Hope, which had been made by the operator at Hope to the operator at Fulton, and had been made a record by the latter. Thus it will be seen that the declaration of the operator at Hope was the testimony sought to be admitted. According to the testimony of the operator at Fulton, the railroad was operated by the block system; that part of the railway system south of Fulton to Clear Lake Junction constituted one block, and the agent at Fulton was required to keep a record of the time the train entered, and left the block. Again, from Fulton to Hope was another block, and he was required to keep a record of the arrival and departure of the trains on that block. The time the train left the block at Hope was given him by the operator there. In the operation of the system the agent at Fulton, after the train going north had passed there, would not permit another train to pass Fulton until he had been informed by the agent at Hope that the northbound train had left the block there. It was just as necessary for the operator at Hope to keep a record of the arrival and departure of the trains from his block as it was for the operator at Fulton to keep such a record. The record kept by the operator at Hope was just as accessible and just as easy to obtain as that kept by the operator at Fulton. Hope was situated in the county where the case was tried, and no reason is shown why the operator at Hope was not examined and used as a witness to prove the time the train in question left the block at Hope going north. He could have testified of his own personal knowledge as to that fact, and could have used the record kept by him to have refreshed his memory in the event it was necessary to do so. The declaration made by him to the operator at Fulton as to the time the train in question left the

block at Hope was made after Gibson had been killed, and so was made at a time when there might have been occasion for him to have made a false declaration. He knew that Gibson had been killed and knew that litigation might arise with the railroad company on account of his death. Then it can not be said that his declaration to the operator at Fulton was made without bias. Counsel for appellant contend that the testimony excluded was a material part of his case, and it may be said that the operator at Hope appreciated this fact. In any event, it does not appear from the record that he did not realize the importance of his declaration, and did not know that it would be favorable to the railroad company in any subsequent litigation it might have relative to the death of Gibson. As we have already seen, no reason is shown why the operator at Hope was not introduced as a witness, and, under the circumstances and for the reasons given, we are of the opinion that the court properly excluded the evidence as being hearsay.

Counsel for appellant also assign as error the action of the court in giving instruction No. 4, which is as follows:

"You are instructed that it is the duty of all persons running trains in this State upon any railroad to keep a constant lookout for a person or property upon the track of any and all railroads; and if any person or property shall be killed or injured by the negligence of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from the neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of the proof shall devolve upon such railroad to establish the

fact that this duty to keep such lookout has been performed.''

In the opinion on the former appeal in this case, the court said: "We think the construction there placed upon the act applies to persons alike, and that the railroad company now owes the same duty to keep a lookout to avoid injuring the trespasser upon its tracks, and that, upon proof of injury to such person by the operation of its trains under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided if a lookout had been kept, a *prima facie* case is made, and the burden of proof then devolves upon the railroad company to show that a proper lookout was kept as required by the statute, and that it used ordinary care to prevent the injury to the person after his discovery in a perilous position in order to escape liability for such injury." *St. Louis, I. M. & S. Ry. Co.* v. *Gibson*, 107 Ark. 431.

Counsel contend that the instruction given does not conform to the ruling of the court on the former appeal; but we do not agree with them in this contention. The effect of our holding in the former opinion is that where proof has been introduced by the plaintiff of an injury to a person by the operation of a train under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided if a lookout had been kept, then the burden is shifted to the railway company to show that such lookout was kept. The instruction complained of does not place the burden on the appellant in the whole case. It only places the burden of proof on the appellant to show that the lookout required by the statute was kept.

At the request of the appellant the court gave the following instruction:

"The court instructs the jury that the mere fact that Mr. Gibson was killed by the train does not under the law entitle the plaintiff to recover damages for his death; before the plaintiff can recover, it must be proved to you by the testimony in this case that the railway company's

enginemen were negligent in failing to keep a constant lookout, or in failing to use reasonable care to keep from striking deceased after they discovered, or could have by the use of ordinary care, discovered his peril. And the burden is upon the plaintiff to prove by the testimony, facts sufficient to raise a reasonable inference that the danger might have been discovered and the injury prevented by the trainmen if a lookout had been kept. And, if the plaintiff has proved such facts sufficient to raise such inference, your verdict should still be for the defendant, if you find from a preponderance of the testimony that a constant lookout was kept by the enginemen, and that they used ordinary care to prevent the injury after actually discovering that deceased was in peril.''

The giving of this instruction shows conclusively that the court did not intend to place the burden upon the defendant in the whole case, but it in express terms told the jury that the mere fact that Mr. Gibson was killed by the train did not entitle appellee to recover damages for his death, and that before appellee could recover she must make out a *prima facie* case by the introduction of proof from which the jury might have inferred that the danger to Gibson might have been discovered and his death avoided if the lookout required by the statute had been kept and that when this *prima facie* case was made by appellee, then the burden devolved upon the defendant to show by a preponderance of the evidence that such lookout was kept.

The testimony on the part of appellee tended to show that Gibson was lying on or near the track at the time he was killed; that the track was straight for a distance of two miles or more in the direction from which the train was approaching, and that a person could have been discovered lying on the track for a distance of 1,350 feet; that if a proper lookout had been kept, appellant's servants could have discovered decedent in time to have avoided killing him. While this testimony was contradicted by the witnesses for appellant, who all testified that they were keeping a proper lookout and stopped

the train as quickly as they could after discovering that the object lying near the track was a person, still this conflict in the testimony has been settled by the verdict of the jury, which is binding upon us, and we are of the opinion that there was sufficient evidence to warrant the verdict.

Other assignments of error in the giving of instructions are pressed upon us for a reversal of the judgment; but we do not deem it necessary to discuss them separately. It is sufficient to say that the instructions given by the court are in conformity to the rules of law laid down in our opinion on the former appeal in this case; and we find no error in the record. Therefore, the judgment will be affirmed.