## DICKERSON *v.* STATE.

### Opinion delivered January 3, 1916.

1. CRIMINAL PROCEDURE—SELECTION OF TALESMEN.—In a prosecution for homicide, in the selection of a jury to try the accused, it is not error for the court to order a venire from bystanders, before a list of special talesmen, which the sheriff had already prepared, were summoned.

2. CRIMINAL LAW—HOMICIDE—TRESPASS—JUSTIFICATION.—Where the appellant and deceased were rival claimants for a piece of land and the crop thereon, the fact that deceased came upon the land, as a trespasser, to gather the crops, will not justify the appellant in assaulting him.

3. PERISHABLE CROPS—ATTACHMENT—GATHERING—RIGHT OF OFFICER.—Where an officer has a perishable crop under attachment, it is his duty to take the necessary steps for harvesting and preserving the same, and it is not unlawful for him to employ one of the rival claimants for that purpose.

4. EVIDENCE—EXPERT TESTIMONY—BEHAVIOR OF DEFENDANT.—In a prosecution for homicide, it is not proper to ask a physician to state what would be the actions of a man who was in a combat with another, and who had received blows sufficient to render him unconscious, the same not being a subject-matter of expert testimony.

5. EVIDENCE—PUBLIC OFFICER—PROOF.—An officer may testify to the fact that he is an officer, and his testimony to such fact is direct evidence; and if the fact is disputed, then the record of his appointment is the best evidence.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; affirmed.

*N. A. McDaniel,* for appellant.

The court erred in refusing to have summoned all the talesmen whose names were selected from a box kept by the clerk for that purpose; in admitting the testimony of Tom Arnold and G. T. Hendricks, and in refusing the testimony of Dr. Kelley, also in refusing instructions No. 8, 9, 10, 14, 15 and 16, asked by defendant. Defendant was entitled to twenty peremptory challenges. 105 Ark. 613.

*Wallace Davis,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

The jury was properly selected. There was no error in the admission of testimony nor in the instructions given and refused.

WOOD, J. Appellant was convicted of the crime of voluntary manslaughter, alleged to have been committed by shooting G. B. Arnold and by beating him on the head.

The appellant was a share-cropper on Arnold's place. Very bitter feeling existed between the appellant and Arnold in regard to the division of the crops. Arnold had instigated a prosecution against the appellant for alleged theft. The crop was under attachment at the time of the alleged killing. The deputy constable testified that he had some papers placed in his hands for service on the appellant, and that he had arranged with the deceased for gathering the crop, which was in litigation between them, and had informed appellant of that fact before the shooting occurred.

On the morning of the killing Arnold and his son and daughter had gone to the potato patch to dig potatoes, and after they had dug three or four rows appellant and his wife were seen approaching. Appellant had a gun and his wife had a large knife in her hand, concealed in her apron. Arnold's gun was a shotgun, and was in the potato house, a short distance away. When Arnold's daughter saw appellant and his wife approaching with a gun she apprised her father of this fact and he thereupon went to the potato house and procured his gun and was returning. When he had come within a distance of thirty or forty steps of the appellant, appellant began shooting at him. Arnold returned the shot with his gun. Appellant shot twice at Arnold with a shot gun, and Arnold, after firing with his shot gun, then fired with a pistol. Appellant and Arnold came together and clinched and fell to the ground. While they were on the ground Mrs. Dickerson stooped to stick a knife in Arnold's back, whereupon Arnold's son grabbed her hand and knocked the knife out of it. Then some shots were fired by Forrest Dickerson, the son of appellant, who was approaching rapidly, which wounded the son and the daughter of Arnold. While Arnold was prostrate on the ground appellant clubbed him over the head and shoulders with a double-barrelled shot gun with force sufficient to break the gun and crush the skull of Arnold. Arnold died in a few minutes.

The circumstances of the rencounter were detailed at great length by the witnesses on behalf of the State and the appellant. The above are substantially the facts as revealed by the testimony, so far as it is material, on behalf of the State.

The testimony on behalf of the appellant tended to show that the appellant went to the scene of the killing to find out how Arnold was digging the potatoes. He carried his gun because he did not feel safe without it. Arnold had been carrying his gun for two months. When appellant came to where the wagon stood he noticed Arnold coming from the potato house with a double-

barrelled shot gun.  Appellant observed from his manner
that he was going to shoot, and he did shoot appellant,
the first shot taking effect in appellant's hip, face and
arm. The second shot hit appellant in the leg.  As soon
as Arnold emptied the gun he came from behind the
wagon and pulled something from his pocket and kept
approaching towards appellant.  Appellant attempted to
shoot but never succeeded in getting the shells out of his
gun.   When Arnold got close enough to appellant he
brought his pistol up and fired.  Appellant got his knife
out, but dropped it before he could use it.   He clubbed
Arnold with his gun and Arnold kept shooting with the
pistol.  Arnold struck appellant with the gun and knocked
him senseless, and when appellant came to himself Arnold
had him by the throat cursing him.   At that time appel-
lant heard Tom Arnold cursing his wife.   Then appellant
heard Arnold's daughter halloo and heard Tom Arnold
say that he was shot.   The old man Arnold then jumped
off of appellant, went a little distance and fell.  Appel-
lant picked up the broken gun and started to his house;
didn't see anyone but his wife and his son Forrest.   He
didn't know what was going on and did not have much
sense the rest of the day.   When he went to the potato
patch he did not know that Arnold was over there and had
no intention of killing anyone, but his only purpose was
to find out what they were doing with the crop.

The above sets forth substantially the material facts
tending to show that appellant killed Arnold in self
defense.

(1)   There was a list of twenty-seven special tales-
men, kept in a box by the clerk for that purpose selected,
to act as jurors when the regular panel was exhausted.
A venire was issued for these talesmen.   The sheriff re-
ported one of them out of the county, one was excused
by the court and some others were excused, and the sher-
iff reported that others had not been summoned because
they were away from their homes.   Thereupon the court
ordered a venire for thirty more talesmen.   The appel-
lant objected at this juncture and moved the court to com-

pel the sheriff to serve the special talesmen before proceeding to summons the additional venire for thirty bystanders, which motion was overruled and appellant duly excepted and urges this as error for which the cause should be reversed. Appellant does not show that any of these jurors were disqualified, and as appellant had no right to have any special jurors to try him there was no error in the court overruling his motion. Appellant did not show that any of the jurors thus selected and who sat in the trial were in any manner prejudiced against him.

(2-3)  Appellant also complains because the court permitted Tom Arnold to testify that when his father come to get witness to help dig the potatoes he had an order from the court. This testimony was secondary, and therefore incompetent. But the error in admitting it was not prejudicial to appellant for the reason that it was wholly immaterial whether Arnold was a trespasser in going upon the land to dig the potatoes or not, for even if he was a trespasser the appellant could not have been justified nor excused in taking his life in the manner which the testimony for the State tended to prove. And, on the other hand, if Arnold was lawfully upon the premises and was authorized by the officer in charge of the attached crop to gather the same, still this would not have excused or justified him in first assaulting the appellant in the manner which the testimony of the latter tended to prove. The jury accepted the testimony of the witnesses on behalf of the State, and, under this testimony, the verdict was warranted, regardless of whether or not Arnold had an order of court for the digging of the potatoes; and the existence or non-existence of this as a fact could not have had any influence upon the minds of the jury one way or the other. Moreover the effect of such testimony was only to show that Arnold, at the time of the killing, was not a trespasser upon the grounds or doing an unlawful act in digging the potatoes. This was proved by the testimony of G. T. Hendricks, who testified that he was deputy constable and as such had em-

ployed Arnold to gather the crop after the same was attached. True appellant objected to this testimony of Hendricks, for the reason that he contended that such an agreement between the officer and Arnold would be unlawful; but not so. It was the duty of the officer, having perishable crops under attachment, to take necessary steps for harvesting and preserving the same, and it was not unlawful for him to employ Arnold for such purpose.

The testimony of witness Tom Arnold to the effect that his father had an order of court meant no more than that he was duly authorized to dig the potatoes, and that fact was shown by the undisputed testimony of Hendricks.

(4) The appellant complains because the court refused to permit Doctor Warren Kelley, on direct examination, to state what would be the actions of a man who was in a combat with another and who had received blows sufficient to render him unconscious. The court correctly ruled that this was not a subject-matter of expert testimony.

(5) There was no prejudicial error in permitting the witness G. T. Hendricks to testify to the effect that he was deputy constable. Appellant objected to the testimony on the ground that "it was not the proper way to show that he was an officer;" and that, "if he was a deputy constable at that time the records would be the best evidence." But an officer may testify to the fact that he is an officer and his testimony to such fact would be direct evidence. If the fact is disputed, then the record of his appointment is the best evidence; but appellant's objection does not challenge the fact, but only the method by which it was sought to be established.

Appellant urges objections to the rulings of the court in refusing certain instructions concerning the method of proving that Hendricks was a deputy constable and his authority to levy upon the crop, and to authorize Arnold to gather the same. But, in view of what we have already observed, these instructions had no place in the case and the court did not err in refusing them. The testimony adduced on behalf of the State and the defense

showing the circumstances of the fatal rencounter from their respective viewpoints made such instructions wholly inapplicable.

Appellant urges error in the refusal of the court to grant certain prayers for instructions. We have examined these in connection with the charge of the court taken as a whole and we find that such of appellant's prayers as were correct were fully covered by the instructions which the court gave. The court fully and correctly declared the law in regard to self-defense, and gave the appellant the right to present every phase of the testimony adduced by him on that issue to the jury. It is unnecessary to set out and discuss these instructions, as they conform to familiar rulings which have been often announced by this court.

There is no reversible error in the record, and the judgment is therefore affirmed.