MITCHELL *v.* LINDLEY.

Opinion delivered March 21, 1921.

1. EVIDENCE—OPINION AS TO PARTY'S FINANCES.—On the trial of a claim of a father for money alleged to have been loaned to his deceased son with which to buy land, where a bank cashier was permitted to testify as to the amount of decedent's deposits on the day he purchased the farm and the amount drawn out by him on that day, the question whether his finances or accumulations were such that he could carry as much as $1,500 in cash at any time was properly excluded, as usurping the function of the jury.

2. EXECUTORS AND ADMINISTRATORS—BURDEN OF PROOF OF CLAIM.—
   One presenting a claim against a decedent for an alleged loan
   not evidenced by writing had the burden of proving the debt.

3. EXECUTORS AND ADMINISTRATORS—CLAIM—SUFFICIENCY OF EVI-
   DENCE.—On trial of a claim for an alleged loan to decedent, a
   verdict for the administrator *held* supported by the evidence.

Appeal from Jackson Circuit Court; *D. H. Coleman,* Judge; affirmed.

STATEMENT OF FACTS.

B. F. Mitchell presented his claim to J. W. Lindley, administrator of the estate of J. C. Mitchell, deceased, for money alleged to have been loaned decedent with which to purchase a farm.

The probate court disallowed the claim, and B. F. Mitchell appealed to the circuit court. The evidence adduced in the circuit court was substantially as follows: On the 25th day of June, 1919, J. C. Mitchell purchased a farm in Jackson County, Arkansas, for $1,925, which was paid in cash.

According to the testimony of Oscar Mitchell and Lillian Mitchell, the brother and sister of J. C. Mitchell, the latter told them at the time he purchased the farm that he had borrowed $1,500 from his father with which to pay for it. After he had purchased the farm, J. C. Mitchell again told them that he had paid for the farm by borrowing $1,500 from his father and with $500 of his own money. J. C. Mitchell had rented some land on the shares in 1918, and there were twelve bales of cotton of the share crop that had been shipped to Memphis, and Mitchell had drawn $100 a bale on this cotton. On the 25th day of June, 1919, he had about $500 on deposit in the bank and had drawn out the balance.

According to the testimony of E. B. Holt, he was cashier of the Bank of Tuckerman, and J. C. Mitchell had done business with the bank for two or three years. He paid the purchase price of the land in question on the 26th day of June, 1919, in cash. He made the payment through the bank and delivered to Holt three packages of currency containing $500 each and a check for $500,

B. F. Mitchell carried an account with the bank, and about a year before this had withdrawn more than $1,500. B. F. Mitchell at the time he drew out his money was given three packages of $500 each and $100 in gold. The $500 packages given to B. F. Mitchell were similar to the ones paid in by J. C. Mitchell at the time he purchased the land. On the 15th day of May, 1919, J. C. Mitchell deposited in the bank $900 which had been advanced him on his cotton which he had shipped to Memphis. Up to the 24th day of June, 1919, J. C. Mitchell had drawn out about $350, and on the 26th day of June, 1919, he had on deposit in the bank about $550. He was then asked: "Was his finances such, or his accumulations such, that he could carry as much as $1,500 in cash at any time?" A. "I think not." Upon objections made by the administrator, the answer was withdrawn from the jury, and it was instructed not to consider it. Counsel for B. F. Mitchell saved exceptions to the ruling of the court.

According to the evidence adduced by the administrator, J. C. Mitchell bought and paid for the land on June 26, 1919. He died on the 19th day of September, 1919. No note or other evidence of indebtedness signed by J. C. Mitchell was presented to the administrator by B. F. Mitchell.

According to the testimony of Dan Pierce and John H. Pierce, B. F. Mitchell told them, before the death of his son, J. C. Mitchell, that the latter had bought the farm and paid for it with his own money.

On cross-examination they stated that B. F. Mitchell told them that his son had the money of his own to pay for the farm. B. F. Mitchell denied that he had had the above conversation with Dan and J. H. Pierce.

The jury found for the administrator, and the case is here on appeal.

*John W. & Jos. M. Stayton*, for appellant.

1. The court erred in excluding the testimony of Mr. Holt from the jury regarding the financial condition of J. C. Mitchell, deceased. Evidence of the probability

of a loan being made was certainly competent.   168 Ill.
419; 85 *Id.* 611; 109 Ill. App. 358; 129 *Id.* 96; 66 Atl. 1049;
1 Wigmore on Ev. 38.

Failure to make claim when occasion therefor exists
has some tendency to prove the invalidity or nonexist-
ence of the claim.   81 Mich. 172 and notes.   See also to
same effect.   33 Vt. 639; 104 Ala. 222; 129 Mich. 429; 31
Ind. App. 151; 58 Md. 442; 11 Conn. 375; 109 Me. 537.
It was therefore error to exclude the evidence of Mr. Holt
as to the financial condition of the deceased, and the error
is prejudicial.

2.   The evidence is not sufficient to justify the ver-
dict.

Hart, J. (after stating the facts).   It is first con-
tended by counsel for appellant that the court erred in
excluding from the jury the testimony of Holt with re-
gard to the financial condition of J. C. Mitchell, deceased,
as follows: "Was his finances such, or his accumulations
such, that he could carry as much as $1,500 in cash, at
any time?" A. "I think not." Counsel contend that the
above testimony was competent as tending to show that
the financial condition of J. C. Mitchell was such that he
was not likely to have had $1,500 at the time he purchased
the farm.

We can not agree with counsel in this contention.
The cashier was permitted to state the amount of money
J. C. Mitchell had on deposit in the bank during the year
1919, the amount he drew out, and the amount he had on
hand on the day he purchased the farm. This was all that
the witness knew about the financial condition of J. C.
Mitchell.   The testimony was conflicting as to whether
or not he had the money with which to pay the whole
purchase price of the farm, and it was a question for the
jury to determine whether or not he borrowed the $1,500
from his father with which to pay a part of the purchase
price of the farm.   The witness could only state the facts
within his knowledge relating to the financial condition
of J. C. Mitchell and his ability to pay cash for the farm

at the time he purchased it. It would not be competent for him to give his opinion as to his ability to pay cash for the farm. That was the precise question for the jury to determine. To allow the witness to express his opinion as to whether or not J. C. Mitchell had $1,500 in cash would be to allow the witness to usurp the functions of the jury. The court allowed the witness to testify as to all matters within his knowledge relating to the financial condition of J. C. Mitchell and properly excluded from the jury the opinion of the witness with regard thereto.

It is also insisted by counsel for appellant that the evidence is not sufficient to justify the verdict. We can not agree with counsel in this contention. Appellant did not introduce in evidence any note or other instrument of writing signed by J. C. Mitchell in which he promised to pay appellant $1,500 or any other sum. The burden was upon appellant to prove his debt. He only did this by the testimony of witnesses who said that J. C. Mitchell told them that he had borrowed $1,500 from his father with which to pay for the land in question.

On the other hand, two witnesses for appellee testified that appellant had admitted to them that his son had paid for the land with his own money. Therefore, the evidence was sufficient to support the verdict, and the judgment must be affirmed.