## DOYLE *v*. STATE.

Opinion delivered December 15, 1924.

1.  ARSON—SUFFICIENCY OF EVIDENCE.—Evidence in a prosecution for arson held sufficient to sustain a finding of guilt.

2.  JURY—INELIGIBILITY OF JUROR.—A juror's ineligibility to serve by reason of not having paid his poll tax could not be raised after the trial, where defendant did not attempt to ascertain the fact on *voir dire* examination, and it did not appear that the juror imposed himself on the court and defendant by representing that he had paid the tax.

3.  CRIMINAL LAW—INSTRUCTION AS TO ALIBI.—An instruction defining the defense of an alibi, and telling the jury that, "while the burden of proof is upon the State to establish the guilt of the defendant beyond a reasonable doubt, it is incumbent upon the defendant to sustain his alibi by evidence which raises in your mind a reasonable doubt that he was present at the time and place of the alleged commission of the offense," *held* correct.

Appeal from Lawrence Circuit Court, Western District; *Denc H. Coleman*, Judge; affirmed.

*L. B. Poindexter* and *H. L. Ponder,* for appellant.

*J. S. Utley*, Attorney General, *John L. Carter* and *Darden Moose*, Assistants, for appellee.

SMITH, J. Appellant was indicted for having burned the barn of W. J. Wright on the night of July 18, 1922. At his trial he was found guilty, and sentenced to a term of two years in the penitentiary, and, to reverse that judgment, has prosecuted this appeal.

He first insists that the testimony was not legally sufficient to sustain the conviction. The testimony tending to support the verdict was to the following effect: After a proper foundation had been laid for the introduction of the testimony of W. J. Wright, who had died since a former trial, which had resulted in a mistrial, his former testimony was read. Wright discovered his barn was afire a few minutes after eleven o'clock on the night of July 18, 1922. The fire originated in a loft where a lot of shucks were stored. He suspected that the fire was of incendiary origin, and excluded all persons from the lot inclosing the barn. A bloodhound was brought

to the scene of the fire about 3:30 on the afternoon following the fire. Tracks were found made by a person who had been to the barn, and who had jumped over the fence as he left the lot. These tracks were measured, and the dog was put on that trail. The ground was sufficiently wet for the tracks to be plainly visible, and were made by a man wearing a No. 7 or 8 shoe. The party making these tracks traveled by a very circuitous route, which led in an unusual way, and were followed by the dog to appellant's house. These tracks were measured about every two hundred yards, and were found to coincide with the track measured at the barn. There were places where the tracks indicated that the man who made them had lengthened his stride. The last measurement of the track was about 40 feet from appellant's house, and was found to coincide with all the others. The distance from appellant's house to the barn was only a quarter of a mile, yet the trail followed by the dog covered a much longer distance. The occupants of appellant's house saw the party coming as they approached it, and were observed to be watching the sheriff and his party, who were following the dog. The members of the sheriff's party thought appellant was about to leave the house by the back way, but appellant came to the officer when he was called. Appellant was barefooted at the time. The conversation between appellant and the officers made it apparent that appellant knew he was being arrested for burning the barn. Shoes, No. 7 or 8 in size, were found, but they were not measured because the party who found them did not have the measure at that time. One member of the sheriff's party testified that appellant remarked, "I knew, when they got the dog, they would get me." Another witness testified that he saw appellant near the place where the barn burned, after the fire, and that he was barefooted at the time, and that he had never seen appellant barefooted before or since.

The dog which followed the trail was shown to have been properly trained and handled. *Fox v. State,* 156 Ark. 428.

Floyd Ward testified that he saw appellant at the church the night of the fire, and that appellant asked him, while they were both at church, to assist him in burning the barn. Appellant stated at the time that Wright was talking too much. This remark related to comments Wright was making about a certain burglary which had been recently committed in the neighborhood. This conversation occurred about an hour before the fire, and the church was about a mile and a half from the barn.

There were certain other circumstances tending, in some degree, to corroborate the testimony recited.

It was the theory of the defense that Floyd Ward had himself burned the barn. But, without setting out the testimony on that phase of the case, it suffices to say that the truth of this testimony was a question for the jury, and that the testimony recited is legally sufficient to sustain the conviction.

It is asserted that a juror who served at the trial was ineligible to serve for the reason that he had not paid his poll tax. It does not appear, however, that the juror imposed himself on the court and defendant by representing that he had done so, and this question cannot be raised after trial, when the defendant did not avail himself of the opportunity, on the examination of the jurors on their *voir dire,* to ascertain if they possessed this qualification. *James* v. *State,* 68 Ark. 464; *Teel* v. *State,* 129 Ark. 180.

The court gave a very comprehensive charge to the jury, to which no exception appears to have been taken, except to instruction numbered 6, which reads as follows: "The defendant's plea of not guilty to the charge contained in this indictment carries with it every legal defense which he may seek to interpose; and the evidence has been introduced on behalf of the defendant for the purpose of establishing an alibi; that is, at the time of the burning of the barn, as alleged in the indictment, he was at some other place, by reason of which it would have been impossible for him to have committed

the crime. While the burden of proof is upon the State to establish the guilt of the defendant by the evidence in the case beyond a reasonable doubt, it is incumbent upon the defendant to sustain his alibi by evidence which raises in your mind a reasonable doubt that he was present at the time and place of the alleged commission of the offense.''

The objection to the instruction is that it cast upon the defendant the burden of showing, beyond a reasonable doubt, that he was not present at the time and place of the commission of the crime, before he could be acquitted on his alibi defense.

The instruction told the jury that the burden was on the State to establish the guilt of the accused beyond a reasonable doubt. The instruction also told the jury that the burden of proving an alibi was on the defendant, but, while this burden is incumbent on the defendant, it is discharged if such evidence raises a reasonable doubt that the defendant was present at the time and place of the alleged commission of the offense. In other words, the proof of an alibi is an affirmative defense; but it is established and is sufficient to require an acquittal if the evidence tending to establish it raises in the minds of the jury a reasonable doubt that the defendant was present at the time and place of the alleged commission of the offense. The instruction given conformed to the law as announced in the case of *Morris* v. *State,* 145 Ark. 241.

No error appears, so the judgment is affirmed.