GREEN *v.* STATE.

4764　　　　　　　　　　　　　270 S. W. 2d 895

Opinion delivered June 7, 1954.

[Rehearing denied October 4, 1954.]

*Jim Merritt* and *Claude M. Cruce,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. The defendant, who has appealed to this court, was convicted of grand larceny for the theft of a cow, the property of Annie Lyles. He was sentenced to serve four years in prison. This is a second appeal involving proceedings under an information filed in 1952. See *Green* v. *State,* 222 Ark. 222, 258 S. W. 2d 56.

Thirteen assignments urged as errors are set out in appellant's motion for a new trial. The first three are those alleging that the verdict was contrary to the law, the evidence, and the law and the evidence. A supplemental motion alleged (a) that while one of the attorneys for the defendant was arguing the case and referring to testimony given by Sheriff Towler, the sheriff, who was in a position to be seen by jurors, "made a gesture with his right hand and a finger across his throat, indicating that he was being injured [by the attorney's argument] and [these gestures were particularly directed to the three colored jurors who were seated on the front left side of the jury box a few feet from the officer]. It was noted that [these three jurors] nodded their heads as if to accept the gesture made by the sheriff."

The succeeding supplemental assignment (b) charged that Homer Matthews, a colored juror, had said that he had heard the sheriff discuss certain phases of the case, and during this conversation the sheriff had asserted he was going to send Green to the penitentiary, or kill him.

The third supplemental assignment was that during the day preceding trial the judge announced that he wanted three or four Negroes for jury service, and directed or suggested that their names be placed near the top of the list. The regular panel, according to appellant's motion, did not contain any Negroes, "so the special panel was opened and contained nine [of that race]." Then, according to appellant's contentions, the problem

was ". . . as to which among the nine should be placed on the panel for trial of the action."

The sheriff, it is charged, walked to the clerk who had the list, and "[without] speaking to any one in particular . . . stated that the first five should be chosen." A further contention is that the clerk replied, in effect, "I don't know about that," and did not attempt to make a selection. Then, says the motion, the sheriff walked to the dais, held a short conversation with Judge Golden, and the Judge told the clerk to take the first five, and this was done. The final complaint under this heading is that ". . . as to qualifications and standing in the community, the four that were omitted from the list did not compare with the five that were selected"—information well known to the sheriff.

We first dispose of matters raised in the supplemental motion, and to sufficiency of the evidence. As to the latter, substantial testimony was given tending to show that the cow had been stolen from Annie Lyles and that the defendant was feloniously implicated, hence a jury question was presented.

It is not shown that the defendant was in any manner injured by the sequence in which the Negro jurors were selected, and we fail to see wherein the court abused its discretion. There was no timely objection—no suggestion that the arrangement was unsatisfactory.

Whether the sheriff made gestures, to which there were inferential responses by the Negro jurors referred to by appellant, is not shown by any evidence. It is true that in the supplemental motion counsel for Green stated that he "offers to prove the allegations" or conclusions, but the only record reference to the supplemental motion appears to be a docket entry and nothing in it shows that the court refused to consider any pertinent matters. We have held that docket entries are not evidence. In *City of Monticello* v. *Kimbro,* 206 Ark. 503, 176 S. W. 2d 152, cases sustaining this rule were cited, including *Baker* v. *Martin,* 95 Ark. 62, 128 S. W. 579. In the Baker case Chief Justice McCulloch said that recitals in the bill of

exceptions cannot be looked to in order to ascertain whether the motion for a new trial had been presented to and overruled by the court, [for] "an order overruling a motion for a new trial is one which should appear on the records of the court." See per curiam orders of Oct. 22, 1945, and Oct. 4, 1948—*Hazelip* v. *Taylor,* No. 7723, and *Woods* v. *Pankey,* No. 8655.

But irrespective of the procedural rule excluding docket entries as substitutes for court orders, we would reject the assignment as a mere conclusion of the movant.

The next assignment relates to the court's rejection of a juror for cause. When Wiley Baker's name was called he stated, in response to a court question, that he had served during the last court term. Judge Golden seriously doubted Baker's eligibility, in view of the limitations fixed by Act 205 of 1951, Ark. Stat's, (supplement), § 39-225. Baker was accepted by each side, but was later excused by the court through fear that ineligibility might be assigned as error. Assuming, without deciding, that the disqualification could be waived, appellant has failed to show that he was prejudiced by the ruling. Insistence is that when the juror was removed the defendant had exhausted his challenges. He does not, however, show that the person accepted in lieu of Baker was objectionable, or that the court on request would not have excused a questioned substitute under a rule of fairness if the person objected to could with reason be regarded as unfit, or favorable to the state's view of the transaction.

We have often said that a litigant is not entitled to a particular juror. *Rose* v. *State,* 178 Ark. 980, 13 S. W. 2d 25.

Inadmissibility of statements made by the witness Brown Calhoun is strongly urged. Calhoun operates the Drew County Auction Sale, where livestock is dealt with. He testified that Raymond Donaldson had been buying and selling cattle. The prosecuting attorney asked Calhoun whether, about June 26th, 1952, he had bought a red heifer (with white face) from Raymond Donaldson. Cal-

houn's reply was that he didn't buy the animal, [but] "I gave him his money back and held the heifer to see if I could find the owner."

Donaldson, said Calhoun, came to the sales lot during the morning bringing some calves, including the one alleged to have been stolen. Donaldson commented that he wanted to sell *that* calf. Calhoun got on the truck, made his inspection, and (in his testimony) said that he remarked that the calf was too gaunt. He also asked Donaldson where he got it. When Calhoun was about to testify what Donaldson told him the questioning was interrupted by an objection that the answer would be hearsay, and the objection was sustained. The court's remarks were: "You can't tell what Donaldson told you, [but] you can tell what he did."

After being told a second time that it was not permissible to repeat anything that Donaldson had said, the witness replied, "Well, I told Donaldson the calf was 'hot.'" When an objection was offered to this statement the court ruled: "This is not hearsay. It is not what Raymond Donaldson said. He is saying what he told Raymond." The final objection was that Calhoun's remarks to Donaldson were made in the defendant's absence; that Calhoun was merely assuming that the calf was "hot," and that the testimony was irrelevant, incompetent, and immaterial. When the court again held that the witness could repeat what he, himself, had said, the objection was renewed, with exceptions when the court reasserted Calhoun's right to tell what his statements had been.

While it is the better practice not to permit a witness to relay his own conversations, the objection does not come within the hearsay rule.

Hearsay is defined as evidence which derives its value in part or in whole from the veracity and competency of some person other than the one who is testifying. It has been held that where it becomes relevant to show that certain statements or declarations were made, such testimony is not hearsay and should be admitted. It is

evidence of what is sometimes spoken of as verbal facts. *State* v. *Corbin,* West Virginia Supreme Court of Appeals, 186 S. E. 179. In *Spivey* v. *Platon,* 29 Ark. 603, it was said that where a witness testifies to a fact without disclosing the source of his knowledge, such testimony will not be excluded on the presumption that it is hearsay; but the court [or jury] will attach less weight to it than would be the case if the means of information were made to appear, with a showing that the factual matter came from personal knowledge of the witness.

Even if the testimony should fall within the hearsay rule, its admission may be rendered proper by the difficulty of obtaining other proof, and because of the peculiar circumstances under which the declarations were made. *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Gibson,* 113 Ark. 417, 168 S. W. 1129.

In *Motors Insurance Company* v. *Lopez,* 217 Ark. 203, 229 S. W. 2d 228, the plaintiff procured a judgment on a contract indemnifying the insured under an automobile collision policy. An error urged by the appealing insurance company was that prejudicial hearsay evidence was admitted when Lopez was permitted to testify, immediately after he had signed the loss or damage agreement, that the garage operators told him that the car— after receiving the repairs contemplated—would not be in as good condition as it was before the wreck: that ''anybody would be able to tell it was a wrecked car, and that it would never again be as good a car as it had been before the wreck.''

In the opinion, written by Mr. Justice LEFLAR, this statement appears: ''If the evidence was received or considered by the jury for the purpose of establishing the truth of what was asserted in it, that is, for the purpose of proving the extent to which the car was damaged, it was inadmissible hearsay, and prejudicial error was committed in allowing it to go to the jury. If on the other hand the mere fact that the statements were made to and heard by Lopez was itself relevant to some issue in the case, and the jury was restricted to consideration of the

statements on that issue alone, there would be no violation of the hearsay rule. See 2 Ark. L. Rev., 26. A statement made out of court is not hearsay if it is given in evidence for the purpose merely of proving that the statement was made, provided that statement be otherwise relevant in the case at trial."

The Lopez jury was admonished that the testimony could be considered in determining why the plaintiff refused to accept a settlement offer, but it could not be considered "as going to the actual damage to the car."

In the case at bar there is no contention that Calhoun's statements that the calf was "hot" meant that he knew or had information that it had been stolen by Green. He was merely discussing with Donaldson a business transaction and explaining why, as between the two, the calf was a risky purchase.

The next contention is that the court erred to the defendant's prejudice in excluding from the jury's consideration a transcript of the testimony given by Annie Lyles at the first trial. The ruling was: "Annie Lyles has been on the stand [and has been] cross-examined from the record. She may be recalled now if [the defendant] wishes any additional testimony [from her]."

The ruling was correct. There is no contradiction of the court's statement that the witness had been examined and cross-examined, and that the very record offered in evidence was used in the cross-examination, presumptively for impeachment purposes. Annie Lyles admitted that during the first trial she was not as emphatic in her testimony as at this hearing. Her explanation was that she did not want to incur hard feelings.

But a controlling reason for not permitting the record to be introduced as a whole is that the method proposed would have deprived the witness of any opportunity of explaining her original testimony, or of asserting that the reporter had incorrectly written or transcribed her evidence. The court's offer to recall the witness was all the defendant could with reason request. Ark. Stat's § 28-713, has no application to the facts here.

On cross-examination the defendant was asked whether, in the presence of the sheriff, prosecuting attorney, and possibly others, he had admitted stealing the calf. He denied having made a confession, the substance of which had been testified to by Sheriff Towler. In an effort to procure a clear-cut answer the prosecuting attorney said: "I am not trying to put you in an embarrassing position: I really am not. But it is important here because you heard Mr. Towler testify, and I am going to have to ask you for a direct answer as to whether or not Mr. Towler's testimony is correct?" It was objected that Towler was a white man and the defendant was a Negro, therefore an unequivocal reply would be embarrassing. The court's comment was: "The witness knows whether [Towler's] testimony [is or is not] true. There is no distinction in color: we tried to wipe that out." The defendant's counsel then said, "He can answer [the question] without having to make that direct statement." The court's ruling was: "I will leave it up to the jury [to determine] whatever they believe and think is right." Exceptions were saved, but the witness did not answer the question. It must be assumed, therefore, that under the court's ruling he was not required to do so.

Sheriff Towler was recalled after the defendant had testified. He had previously stated that Green had made a voluntary confession—a fact denied by the defendant. The prosecuting attorney asked this question: "As the chief law-enforcement officer of Drew county, . . . would you tell a lie to send a man to the penitentiary"?

This, of course, is not an appropriate method of proving or disproving veracity. But it must be remembered that under the tension of trial where the requirement for prompt action is always present the niceties of examination and cross-examination cannot always be observed. We must, on appeal, determine whether particularized conduct, even though improper, was prejudicial; or, if prejudicial, was the matter waived? In the transcribed testimony the answer appears to have been given before the court made an affirmative ruling, but following coun-

sel's comment that exceptions were saved the reporter has written: "Defendant's objection being overruled, he saves his exceptions." There is no way to determine whether the objection was made before or after the court ruled—if, in fact, there was a ruling. A request that the jury be admonished to disregard the question in the form it was asked would have been in order, but it was not made.

We have examined the instructions—those given and refused—and do not find an erroneous declaration of the law or a failure to submit issues to which the defendant was entitled; nor do we find error in any of the other points argued as grounds for reversal.

Affirmed.

Mr. Justice GEORGE ROSE SMITH, Mr. Justice MILL-WEE and Mr. Justice ROBINSON dissent.

ROBINSON, J., dissenting. In my opinion there are two errors in the record which call for a reversal. Therefore I respectfully dissent.

First, the testimony of Brown Calhoun was an expression of an opinion as to one of the principal issues in the case, the question of whether the animal was stolen was admitted over the objection and exception of defendant, and constitutes reversible error. At the time Calhoun expressed his opinion, the evidence of which was allowed to go to the jury, he did not pretend to know anything about the animal as a fact. The record clearly shows his opinion was based on mere suspicion. There is no rule of law permitting the introduction of opinion evidence such as given by the witness Calhoun in this case. He gave as his opinion testimony that the animal involved was "hot"; it is a matter of common knowledge that this is a term frequently applied to stolen property. "Conclusions of law or of fact upon which the decision of the case depends are not permissible to be drawn in evidence by expert witnesses." *Underhill on Criminal Evidence,* 4th Ed., p. 437. Prof. Underhill also says, in the same volume, page 436.

"Ultimate facts directly in issue are for the determination of the jury, and not for an expert witness." Here one of the ultimate issues was whether the animal had been stolen.

In *Criglow v. State,* 183 Ark. 407, 36 S. W. 2d 400, Mr. Justice Frank Smith said: "But the question whether these witnesses were mistaken in their identification, whether from fright or other cause, was one which the jury, and not an expert witness, should answer, This was a question upon which one man as well as another might form an opinion, and the function of passing upon the credibility and weight of testimony could not be taken from the jury. *Dickerson v. State,* 121 Ark. 564, 181 S. W. 920; *Mitchell v. Lindley,* 148 Ark. 37, 228 S. W. 728."

Next, the action of the court in excusing a juror after all the defendant's peremptory challenges had been exhausted, when the juror had been accepted previously by both the state and the defendant was error. In selecting the jury, the second venireman called was Wiley Baker. During his *voir dire* examination it developed that he had served as a juror at the last term of court. Upon ascertaining this fact, the record shows the following: "By the Court: 'Do you want to raise that as a question? I seriously doubt he can serve. You are going to have to specifically waive it because under the law now he is not supposed to serve but once every two years.' By Mr. Merritt: [counsel for defendant] 'Because of the small number of jurors we have to select the jury from, we are going to waive it.' By Mr. Linder: [prosecuting attorney] 'Mr. Baker is a perfectly good and acceptable juror to the State but I would like to raise the question as to whether or not the defense counsel can waive that.' By the Court: 'I am going to tentatively pass him and reserve my ruling. I might take him off for cause later.' Whereupon the said Wiley Baker is accepted by both sides as No. 2 on the list of jurors to try the case. Thereupon after eleven jurors had been accepted as 'Good' and after the State had exhausted four

challenges and the Defendant eight challenges, the Court makes the following statement in Chambers: By the Court: 'As the law says a person is not eligible to serve as a juror except every two years I am going to excuse Mr. Baker. By Mr. Merritt: 'The defendant agreed to accept the juror and after having exhausted his challenges then the attorney for the State reraised the question with the Court and as a result the juror was excused and we object, and save our exceptions.' "

It is clear from the record as above quoted that both the prosecution and the defendant accepted Baker as a juror, but there was some doubt in the mind of the prosecuting attorney as to whether the ineligibility of the juror could be waived by the defendant. With this point under consideration the court reserved a ruling until later, but in the meantime Baker was accepted as a juror; when he was accepted, the defendant had not exhausted any of his peremptory challenges. After eleven jurors, including Baker, had been accepted and the defendant had exhausted all of his peremptory challenges, the court excused Baker over the objection and exception of defendant. Evidently the court had come to the conclusion that the defendant could not waive the disqualification of a juror, as no other reason is assigned for excusing Baker.

In this conclusion the court was in error; this Court has held several times that the disqualification of a juror may be waived; in fact, the disqualification can not be raised after the verdict if the defendant, through failure to exercise diligence failed to discover the disqualification and make proper objection before the jury was impanelled. *Daniel* v. *Guy,* 23 Ark. 50; *James* v. *State,* 68 Ark. 464, 60 S. W. 29; *Doyle* v. *State,* 166 Ark. 505, 266 S. W. 459. The state and the defendant had specifically waived their right to challenge the juror for cause, and had accepted him.

An attorney trying a case uses his peremptory challenges in accordance with the number of jurors remaining to be selected. No trial lawyer would exhaust his last peremptory challenge with several jurors

yet to be chosen, except in the most unusual circumstances or extreme emergency. But the last peremptory challenge is often used after eleven jurors have been selected; at that point the identity of the last venireman to be called is usually known.

It is argued that no prejudice is shown to the defendant in excusing the juror previously selected after all the defendant's peremptory challenges were exhausted. In that connection in *Williams* v. *State,* 63 Ark. 527, 39 S. W. 709, the court said: "It is true that we cannot certainly say just how the discharge of these jurymen was prejudicial to the defendant. Indeed, we may not be able to say positively that it was prejudicial to him at all; but at the same time we cannot say that it was not detrimental to him, and in fact we are rather inclined to think it was. But this uncertainty is, of itself, a strong argument against the propriety of such a procedure." The cause was reversed by reason of the court's action in permitting a juror to be excused after defendant's challenges were exhausted.

In *McGough* v. *State,* 113 Ark. 301, 167 S. W. 857, the court said: "The defendant exhausted all of his challenges, and after he had done so the State was permitted, over his objection, to challenge three of the jurors who had been previously selected. It has been held that the court may, in its discretion, permit the state or the defendant to exercise peremptory challenges after having accepted a juror; but it has also been held that an election by the State to challenge a juror, after his acceptance by both parties, must be exercised before the defendant has exhausted his challenges, and it can not thereafter be done."

In all the cases in this state we have found, with the exception of one, it is clearly stated or implied that it is reversible error to permit a juror previously accepted to be excused after all of defendant's challenges have been exhausted.

"The record does not show that at the time the court permitted the prosecuting attorney to exercise a

peremptory challenge on a juror who had been previously accepted that the appellants' right to peremptory challenge had then been exhausted. The panel had not been completed, and the appellants at that time still had the right to one peremptory challenge.'' *Ruloff and Berger,* v. *State,* 142 Ark. 477, 219 S. W. 781.

''It is also contended by counsel for defendant that it was error for the court to permit the State to peremptorily challenge the juror G. W. Gunter. The juror was accepted on the first day of the trial and on the next day after the defendant had exhausted all of his challenge but one the State was permitted to exercise a peremptory challenge and excuse Gunter from the jury. Thus it will be seen that the defendant had not exhausted all of his peremptory challenges, and the Court, in the exercise of its discretion, could permit the State to peremptorily challenge the juror after he was accepted on the jury.'' *Dewein* v. *State,* 114 Ark. 472, 170 S. W. 582.

''These cases do not support the defendant in his contention, for there is no showing made that at this time the challenges of the defendant had been exhausted.'' *Hannah* v. *State,* 183 Ark. 810, 38 S. W. 2d 1090.

''It is not shown that the defendant had exhausted his peremptory challenges when the jury that tried him was completed; and that he was prejudiced by the discharge of McNew. Unless it so appeared, it was within his power to protect himself against the impanelling of an objectionable juror on account of the discharge of McNew. The record fails to show any reversible error in that respect was committed.'' *Bevis* v. *State,* 90 Ark. 586, 119 S. W. 1131.

*Temple* v. *State,* 126 Ark. 290, 189 S. W. 855, is directly in point. There the court said: ''It was held in some of these cases that the court, in its discretion, might permit the State to use a peremptory challenge on a juror who had been accepted by both sides where the defendant had not exhausted all his peremptory

challenges; but in all the cases in which it was held not to have been error to permit this action, the defendant had not exhausted his peremptory challenges. The test seems to be whether the defendant has remaining as many challenges as the State is permitted to exercise, and upon the authority of these cases, the judgment of the court must be reversed.''

In *Collins* v. *State,* 200 Ark. 1027, 143 S. W. 2d 1, the action of the trial court was sustained in permitting the state to challenge a juror after the defendant had exhausted all of his challenges; but in that case the trial court offered to permit the defendant to exercise an additional peremptory challenge, and therefore on that point is distinguishable from all the other cases heretofore cited, and is not in point with the case at bar, because here the trial court did not offer to permit the defendant to exercise an additional challenge.

In my opinion the law in this state up to this time has been well settled that it is reversible error to excuse a juror who has been selected by both sides after the defendant has exhausted all of his challenges.

Justices MILLWEE and GEORGE ROSE SMITH join in this dissent.