## Flanagin *v.* The State.

It is legitimate to go into evidence to show the circumstances under which a party accused of crime failed to deny a statement made in his presence tending to connect him with it—as that he was induced to remain silent under the influence of threats—but it is irrelevant, and therefore illegal, to inquire as to threats affecting other suspected persons; and so, a question as to threats made against the accused and others, being an entire one, was bad, and the court properly overruled it.

The conduct of the prisoner at the time of his arrest—as where he and others being produced for the purpose of identifying him, he partially concealed himself—was proper for the consideration of the jury, as raising a presumption of guilt.

Where two persons have lived in illicit cohabitation, the one is a competent witness for or against the other.

When a child under fourteen years of age is offered as a witness, inquiry should be made as to the degree of understanding he possesses; and if he appears to have sufficient natural intelligence, and to have been so instructed as to comprehend the nature and effect of an oath, he should be admitted to testify, no matter what his age may be.

It is the duty of the court to *advise* the jury not to convict of felony upon the testimony of an accomplice without corroboration; but not to *instruct* them to do so; and instruction to that effect was properly refused.

*Appeal from Pulaski Circuit Court.*

Hon. Liberty Bartlett, Circuit Judge.

HOWARD & MOORE, for appellant.

The appellant claims that it was legitimate, in cross-examination, to go into all the circumstances connected with the arrest and informal examination of the parties jointly indicted, a part of which the prosecution had brought out, so as to ascertain whether any threats or inducements had been held out to induce the parties to testify.

The testimony as to the conduct of the prisoner when arrested was clearly illegal—he was not then *charged with an offense.*

Cohabitation without marriage does not render one party incompetent as a witness for or against the other. *2 Dev. & Bal., 177; 9 Ala., 990; Bathews v. Galindo, 4 Bing., 610;* and the court clearly erred in rejecting the testimony of Ann Skelton.

The court erred in excluding the testimony of Ben. McDougal, who was set aside as a witness because he was only thirteen years old. In the case of infants, no time is fixed as the standard when they are not competent as witnesses; their competency depends on their "natural intelligence," and whether "they have been so instructed as to comprehend the nature and effect of an oath," "as it shall appear on examination in court." *Bull, N. P., 293; 1 Greenl. Ev., 367, and cases cited.*

The broad doctrine is laid down in the text books that it is competent for the jury to convict on the testimony of an accomplice alone; but the rule and practice in cases of felony is laid down correctly by Mr. Greenleaf, *(1 Gr. Ev., sec. 380,)* where he says the jury may, if they please, act upon the testimony of the accomplice, without any confirmation, but the judge will advise them not to convict of felony on such testimony, without corroboration. And all that the prisoner asked was that the court should so advise the jury.

JORDAN, Attorney General, contra.

COMPTON, J.

The appellant, a colored person, was convicted, in the Pulaski circuit court, of murder in the first degree, and sentenced to

be hanged. A motion for a new trial was overruled, and the case now comes up, by appeal, for consideration in this court.

The first question presented, is as to the admissibility of certain evidence sought to be elicited, on cross-examination of the witness Giles, who was introduced on behalf of the State. The witness stated, on his examination in chief, that he was present when the accused was arrested and taken before one Farrington, to be interrogated; and that a knife, shown the witness, he believed to be the identical knife produced on that occasion, by one Campbell, who said that the accused had borrowed it from him. On cross-examination, the witness further stated that the accused, and other persons thought to be connected with the murder, were repeatedly taken before Farrington and interrogated; whereupon, the counsel for the defense proposed to ask the witness whether threats were made, or whether inducements of any kind were held out to any of the parties, during the several examinations, in order to obtain from them information touching the crime of which they stood suspected—which the court refused to permit. In the progress of the trial it had already been made to appear, by the testimony of an accomplice, that the knife alluded to was borrowed from Campbell by the accused, on the night of the murder, and was used in effecting an entrance through the window of the house in which the fatal blow was struck. The object of the prosecution was to corroborate the testimony of the accomplice by that of the witness, Giles; as the silence of the accused, when the knife was produced in his presence, accompanied by the statement of Campbell that he had loaned it to him, might be regarded as an implied admission, on the part of the accused, that he had so borrowed it. Any evidence, therefore, tending to show that the accused remained silent under the influence of threats or promises, was certainly admissible; but the question propounded to elicit such evidence was so framed as to involve an inquiry into other matters not relevant to the issue. It was strictly legitimate to go into evidence to show the circumstances under which the accused

failed to deny the truth of Campbell's statement, at the time the knife was produced, but it was irrelevant, and therefore illegal, to inquire as to threats made, or inducements held out, affecting other suspected persons, at the several times when they were interrogated by Farrington. The question being an entire one, embracing matters which were not as well as matters which were legal, the whole question was bad, and the court properly overruled it. *George v. Norris, 23 Ark., 121.*

It is next insisted that the court erred in refusing to exclude so much of the testimony of the witness, Mitchell, as shows the conduct of the accused at the time he was arrested. The accused, who was a soldier in the 54th U. S. colored infantry, was suspected, in consequence of having sold to one Gorman a watch, which was taken from the deceased at the time of the murder. The regiment was formed in line, by the officer in command, so that Gorman might the more readily identify the soldier from whom he bought the watch. The witness then stated that, while Gorman was passing along the line for this purpose, the accused partially concealed himself behind the door of one of the houses which stood near the line—to which the counsel for the defense objected. The evidence was proper for the consideration of the jury, as raising a presumption of guilt, and there was, therefore, no error in admitting it. *Whar. Crim. Law, 269.*

The next question is, as to the competency of Ann Skelton, a colored woman, who was offered as a witness for the defense. On preliminary examination, the witness said she had lived with the accused for a length of time—how long was not stated—as his wife, when they quarreled and separated; that they never married; but, in her own language, "just took up together." Upon this statement, the court below rejected the witness as incompetent. This was error. The general rule which forbids the examination of the wife as a witness, where the husband is a party to the suit, can not be applied; because the relation of husband and wife is not shown to have existed between the parties. The bond of their union was illicit co-

habitation, the witness occupying the attitude of a kept mistress only; and in such case, it is well settled by the authorities, that the one is a competent witness for or against the other. *Greenl. Ev., vol. 1, sec. 339; Bathews v. Galindo, 4 Bing., 610.*

The defense also offered Ben. McDougal as a witness, who, in answer to a question asked by the court, said he was thirteen years of age—whereupon, the court refused to examine him further as to his capacity to testify ; but excluded him as incompetent. In this there was error. As to children, there is no precise age within which they are absolutely excluded, or the presumption that they have not sufficient understanding. At the age of fourteen all persons are presumed to have common discretion and understanding, until the contrary appears; but under that age it is not presumed; hence, inquiry should be made as to the degree of understanding which the child, offered as a witness, possesses ; and if he appears to have sufficient natural intelligence, and to have been so instructed as to comprehend the nature and effect of an oath, he should be admitted to testify, no matter what his age may be. *Greenleaf's Ev., vol. 1, sec. 367, and authorities above cited.*

The court refused to instruct the jury, on motion of the counsel for the defense, that " unless they believed the testimony of the accomplice was corroborated, they should acquit." Although the testimony of an accomplice should be weighed with great caution, there is no rule of law which requires the jury to disbelieve him unless his testimony is corroborated by other evidence. On the contrary, the jury may, if they choose to do so, act upon the evidence of the accomplice, without any confirmation of his statement. It is the duty of the court, however, to advise the jury not to convict of felony upon the testimony of an accomplice, without corroboration. In such case, the court does not withdraw the cause from the jury by positive direction to acquit, but only advise them not to give credit to the testimony. *Greenl. Ev., vol. 1, sec. 380.* Here, the instruction asked for, was such that the jury would have regarded it as a positive direction to acquit, unless the testi-

mony of the accomplice was corroborated; and it was, therefore, properly refused.

There was no error in refusing to give the fourth and sixth instruction, moved by the counsel for the defense. The instructions were not applicable to the state of the case made by the evidence, and, without explanation, were calculated to mislead the jury.

For the errors above indicated, the judgment must be reversed, and the cause remanded, with instructions to grant the accused a new trial.