PAXTON *v.* STATE.

Opinion delivered October 12, 1914.

1. CRIMINAL PROCEDURE—DIRECTION OF VERDICT OF GUILTY.—The trial court may in a criminal cause direct the jury to return a verdict of guilty, when the evidence is consistent and reasonable, the witnesses unimpeached, and the evidence is of such a nature that it would be unreasonable for the jury not to return such a verdict, and that from the evidence reasonable minds could draw only the conclusion that defendant was guilty.

2. DIRECTED VERDICT—DUTY OF JUDGE.—A trial judge may direct a verdict only where the evidence raises no material question of fact for the jury's determination.

3. WITNESSES—CROSS-EXAMINATION—IMPEACHMENT. — A witness may always be impeached by cross-examination.

4. CRIMINAL LAW—CREDIBILITY OF WITNESSES—QUESTION FOR JURY.— Where defendant was being tried for selling liquor unlawfully, and the State's witnesses were men who had been employed to procure the proof, the question of their credibility is one for the jury, and it is error to direct the jury to return a verdict of guilty.

Appeal from Little River Circuit Court; *Jefferson T. Cowling,* Judge; reversed.

STATEMENT BY THE COURT.

Appellant was tried upon the charge of unlawfully selling liquor, and the State offered evidence tending to show that he had made two separate sales, but the proof concerning one of these alleged sales shows only that he procured whiskey for another, and this proof is insufficient to sustain a conviction for making a sale. See *Woods* v. *State,* 114 Ark. 391.

The proof concerning the second alleged sale was made by witnesses named McNutt and Nisler, and their evidence was entirely sufficient to sustain the conviction

had it been passed upon by a jury.  Upon the cross-examination of these witnesses, however, they testified that they were employed by an anti-saloon league to secure evidence against violators of the liquor laws and to appear and testify in these criminal prosecutions.  These witnesses were white men and testified that they received $5 per day and expenses, and that these expenses included their railroad fare, any whiskey which they might purchase, and their board.  They further testified that they were seeking to secure evidence against certain negroes and that in their efforts to secure this evidence they associated with these negroes, ate and slept at their houses, and McNutt shot craps with them, and Nisler loaned money to others who played in the game, and both participated in drinking whiskey with the negroes after having purchased it.

The defendant did not testify in his own behalf, nor did he offer any evidence in support of his plea of not guilty, and at the conclusion of the State's evidence the court directed the jury to return a verdict of guilty, which was done, and this appeal has been prosecuted from that judgment.

*Steel, Lake & Head,* for appellant.

1.  The testimony of the prosecuting witnesses is such that it can not be said as a matter of law that the jury must have believed it.  As to the McNutt sale, the evidence shows that he himself was a bootlegger; that he associated with negroes, ate and slept at their houses, engaged in crap games with them, and that he was working for five dollars a day and expenses in hunting up evidence of liquor violators.  The jury were not bound to accept as true the evidence of a man of such character and having such interest in the prosecution.  79 Ark. 247; 89 Ark. 273-6.

2.  As to the McElhannon sale, there was no violation of law by Paxton.  The evidence shows that the prosecuting witness pointed out to appellant the place where the liquor was sold and that McElhannon gave him

the money and sent him there to procure the whiskey for
him.   45 Ark. 361; 60 Ark. 312; 68 Ark. 468; 72 Ark. 14;
82 Ark. 405; 90 Ark. 582; *Id.* 589; 101 Ark. 569; 105
Ark. 462.

*Wm. L. Moose,* Attorney General, and *Jno. P.
Streepey,* Assistant, for appellee.

The court's instruction to find appellant guilty was
proper. 105 Ark. 462; 162 S. W. (Ark.) 1086; *Wilson
v. State,* ms. op.

SMITH, J. (after stating the facts).   (1)   It is set-
tled that the court may, even in a criminal case where
imprisonment is not a part of the punishment, direct a
jury to return a verdict of guilty, and the action of trial
courts in so doing has been several times approved by
this court.   But this should be done only when the evi-
dence is reasonable and consistent, and the witnesses
stand unimpeached on account of either bias or prejudice
and nothing is shown in the evidence which would raise
any question as to their veracity, and the evidence offered
is of such a nature that it would be arbitrary and capri-
cious for a jury to refuse to believe the witnesses, and the
proof is such that reasonable minds could draw only one
conclusion from the evidence, that conclusion being the
guilt of the party.

In the case of *St. Louis Southwestern Ry. Co. v.
Trotter,* 89 Ark. 273, an instruction was approved in
which a jury was told "that you are not bound to accept
as conclusive the statement of the witnesses that the en-
gine was in good order and carefully operated, although
there may be no direct evidence to contradict them, but
you will consider all the circumstances and evidence
bearing upon the condition of the engine and mode of
operating it, and the circumstances under which the fire
took place, in arriving at your verdict."

(2)   It is the province of the judge to pass upon any
question involving the competency of the witness and
the admissibility of the evidence offered; but it is the
province of the jury to pass upon the weight of the evi-

dence and upon the credibility of the witness; and the trial judge may direct a verdict only where the evidence raises no material question of fact for the jury's determination. In other words, where the evidence raises questions which at last are questions of law.

(3) The right to impeach a witness by cross-examination is universally recognized. The leading case in our reports on that subject is the case of *Hollingworth v. State*, reported in 53 Ark. 387, where, in an able discussion of this question, Judge Hemingway, speaking for the court, among other things, said:

"* * * It is always competent to interrogate a witness on cross-examination touching his present or recent residence, occupation and associations; and if, in answer to such questions, the witness discloses that he has no residence or lawful occupation, but drifts about in idleness from place to place, associating with the low and vicious, these circumstances are proper for the jury to consider in determining his credibility. That such a life tends to discredit the testimony of the witness, no one can deny; when disclosed on cross-examination, it is exclusively for the jury to determine, whether any truth can come from such source, and if so, how much."

In the case of *Kansas City So. Ry. Co.* v. *Belknap,* 80 Ark. 587, it was held not error to permit a witness for a railway company to be asked if transportation had been furnished him, and it was there said:

"The probative force of such evidence may be and is very weak, but the weight of it is for the jury. * * * It is proper always to show the bias or prejudice of a witness toward a party litigant as affecting the credibility of the witness. This is not collateral matter. *Crumpton* v. *State,* 52 Ark. 273."

In the case of *Skillern* v. *Baker,* 82 Ark. 86, where the action of the trial judge in directing a verdict was reversed, the court said: "But we are of the opinion that under the evidence this direction was improper. It may be said to be the general rule that where an unimpeached

witness testifies distinctly and positively to a fact and is not contradicted, and there is no circumstance shown from which an inference against the fact testified to by the witness can be drawn, the fact may be taken as established, and a verdict directed based as on such evidence. But this rule is subject to many exceptions, and where the witness is interested in the result of the suit, or facts are shown that might bias his testimony or from which an inference may be drawn unfavorable to his testimony or against the fact testified to by him, then the case should go to the jury.''

The case of *Merchants' Fire Ins. Co.* v. *McAdams*, 88 Ark. 550, is to the same effect.

In the article on the subject of Trials in 38 Cyc. 1567, the duty of the court in passing upon a request to direct a verdict was defined as follows:

''Doubts should in all cases be resolved in favor of the submission of the case to the jury. It is only when the court can find no evidence which in its deliberate and ultimate judgment is entitled to be weighed that the jury should be instructed in terms that there is no evidence to support the burden of proof which rests upon the party. A verdict should not be directed except in cases where the evidence is so conclusive that reasonable minds could not differ as to the result to be reached. A verdict should not be directed unless the proof is free from substantial conflict, although the evidence preponderates in favor of one of the parties, or although the conflict arises only by indirection. A verdict should not be directed when it must be based on some fact which must be inferred from the evidence, and which is not a legal presumption therefrom; where the evidence would warrant a finding either way; where, although there is no conflict in the testimony of the witnesses, or although the facts be conceded, the evidence reasonably tends to contradictory conclusions. Nor should a verdict be directed where a party is the sole witness in his own behalf, and his evidence, although uncontroverted, is confusing, or on the

uncontroverted testimony of an interested witness, or of a witness shown to be hostile to the opposite party * * * *.''

Numerous cases are there cited in support of the text quoted.

It may be said that this evidence was undenied by the defendant, who was present and failed to testify. But under the statutes of this State a defendant may testify or not, as he pleases, and the statute expressly provides that his failure to testify shall not create any presumption against him. Section 3088, Kirby's Digest.

(4) Whatever may be said of the necessity of resorting to the means here employed of securing evidence in cases of this character it is nevertheless true that the State's witnesses were employed as spies and had that interest in securing convictions. At any rate, we think the proof was sufficient to require the submission of their credibility to the jury, and especially do we think this is so when taken in connection with the proof in regard to their associations and conduct. However convinced the trial judge may have been of the truthfulness of the evidence of these witnesses, the fact remains that an attempt was made, in the methods provided by the law, to establish the fact that these witnesses were not credible and the jury should have been permitted to pass upon that question.

For the error committed in directing a verdict the judgment will be reversed and the cause remanded for a new trial.

KIRBY, J., dissents.