(No. 10874.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK ZUREK, Plaintiff in Error.

*Opinion filed February 21, 1917—Rehearing denied April 4, 1917.*

1. CRIMINAL LAW—*motion to direct a verdict should not be entertained in criminal case.* A motion to direct a verdict for the defendant should not be entertained in a criminal case, as the statute provides that juries shall be the judges of both the law and the facts in criminal cases, but it is proper practice for the trial judge, if he deems the evidence of guilt wholly insufficient, to advise the State's attorney that a verdict of guilty will be set aside if rendered.

2. SAME—*what is not ground for reversal on the evidence.* The fact that only one witness testifies to the commission of the crime and that he is contradicted by the accused is not necessarily ground for reversal of a judgment of conviction.

3. SAME—*when a conviction for confidence game is proper.* A conviction for the confidence game is proper where the evidence shows that the accused, through the confidence reposed in him by the victim as a friend of long standing, brought the swindler and the victim together and was an accessory before the fact to the swindling operation; and this is true even though the trick or device used to obtain possession of the money may constitute a separate crime under some other provision of the Criminal Code.

4. SAME—*when instruction as to bias against accused is properly refused.* An instruction stating that the jury has no right to disregard the testimony of the accused from bias or prejudice or because he is the defendant is properly refused, where other given instructions advise the jury that they have no right to disregard the testimony of the accused because he is accused of crime but that his credibility must be put to the same tests as are legally applied to other witnesses, and that he must be proved guilty so clearly that there is no reasonable theory, under the evidence, on which he could be innocent.

5. SAME—*doctrine of reasonable doubt should be made to apply to all the evidence.* An instruction in a criminal case telling the jury that if they can reasonably account for any fact in the case upon a theory or hypothesis that will admit of the defendant's innocence it is their duty to do so, is properly refused as attempting to apply the doctrine of reasonable doubt to any single fact instead of to the whole evidence.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

BERNARD J. BROWN, for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, GEORGE P. RAMSEY, and E. E. WILSON, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Frank Zurek, plaintiff in error, Walter Nowicki and one Kaminski were charged in the first count of an indictment returned into the criminal court of Cook county with obtaining from John Piniaszek $1910 by means of the confidence game, and in the second count with larceny of that sum of money. Nowicki and Kaminski were not found, but Zurek was tried and upon evidence proving him to have been an accessory before the fact was convicted. He was sentenced to the penitentiary, and sued out a writ of error from this court to obtain a review of the judgment.

The only evidence touching the commission of the alleged crime was the testimony of John Piniaszek and the defendant. Piniaszek gave the following account of what occurred: The defendant kept a saloon and did some business as a real estate agent. He and Piniaszek were friends of several years' standing and Piniaszek was frequently in the saloon. About three weeks after Christmas, 1914, Piniaszek was in the saloon and the defendant asked him about how much money he had in the box. Piniaszek told him about $400, and the defendant said he had a man who could make money and Piniaszek should not say anything about it to anybody but should come to the saloon on Tuesday, when the man would be there. Piniaszek came to the saloon at the time fixed and the defendant took him into the kitchen and introduced him to Kaminski. The defendant then said to Kaminski that this was the man he had been telling him about; that he had money in the box and could bring money and would like to see how Kaminski made

money. Kaminski took some white paper from his pocket, but the defendant said that Kaminski would not show anything that day but Piniaszek should come sometime to-morrow. The next day Piniaszek went to the saloon and went with the defendant and Kaminski from the kitchen to the front room, where Kaminski took a paper from his pocket and the defendant took money from his pocket and gave Kaminski two one-dollar bills. Kaminski put a bracket on one side of a bill and another bracket on another side, covered the paper and put it in a telephone book and the defendant stood on it. Kaminski then directed the defendant to get a pail of water, and Piniaszek then stood on the telephone book. When the defendant brought in the pail Kaminski covered the pail with a rag, put the papers in it and took out three one-dollar bills, and Kaminski said to the defendant that he could make them much better than that. Piniaszek was given the two one-dollar bills which it was supposed had been made and he took them with him to his work. They were wet and he dried them on the steam radiator. In the evening Piniaszek came to the defendant and told him it was impossible for Kaminski to make money,—that there was a number on it; but the defendant said that Kaminski knew how to make money; that he had been making it for a long time; that he made a five-dollar bill, and his wife changed it in a grocery store and it was good. The defendant told Piniaszek to come again on Friday, which Piniaszek did, and he then met the defendant and Kaminski. They asked him if he wanted to make the money, and he said "No." Kaminski went out, and the defendant told Piniaszek not to be afraid,— that people never got rich working. Three days afterward Kaminski came to the house of Piniaszek, stayed a few minutes and told Piniaszek not to speak to the defendant about it. Five days afterward Kaminski came to the house again, carrying a satchel, in which it afterward turned out

there were two sticks of wood and some waste paper. In the meantime Piniaszek had taken money from the bank amounting to $1915, part of which belonged to him, part to a girl who boarded at his house and part to his brother-in-law. He gave the money to Kaminski, who selected from it two ten-dollar bills and three five-dollar bills and said they were no good. He straightened out the bills, put them together, covered them with a paper, put them between two boards, pressed the boards together, gave them to Piniaszek, and said he should keep them and he would go out and bring some oil. After half an hour Piniaszek opened the boards, found some blank paper and nothing else, and never saw Kaminski after that. The paper was discolored, and Piniaszek thought Kaminski had spoiled his money, as he broke a bottle in the room and it smelled terribly. The defendant had told Piniaszek that the money Kaminski would make would be divided between them,— half to Kaminski, one-fourth to the defendant and one-fourth to Piniaszek. About four weeks after the disappearance of Kaminski, Piniaszek went to the saloon and told the defendant that Kaminski had spoiled his money, and the defendant told him that he should be quiet or he would go in a hole. Piniaszek was arrested at the instance of the girl boarder and then told what had occurred. The defendant denied in detail all the testimony of Piniaszek concerning any knowledge on his part of the transaction or participation in it, and testified that Kaminski had been introduced to him by Nowicki as a prospective purchaser of real estate; that Kaminski claimed he had lately left Russia on account of the war and asked him to change some Russian money, which the defendant refused to do, and that he knew nothing more about him.

Error is assigned upon the refusal of the court to direct a verdict of not guilty. That is a motion recognized by the practice in civil cases, where the decision of questions

of law is committed to the court and the determination of questions of fact rests with the jury. In cases of that class the motion raises a question of law and is properly addressed to the court, which may direct a verdict for either party. A verdict for the plaintiff may be ordered if a cause of action has been legally established and no defense appears, or the court may direct a verdict for the defendant if no cause of action has been proved or if a perfect legal defense has been established, and in either case there is no invasion of the right of trial by jury, because the court decides only questions of law and determines no controverted question of fact. Criminal prosecutions are not conducted according to the practice in civil cases, and the statute provides that juries shall be judges of the law and facts. The question of the guilt or innocence of the accused is one of mixed law and fact, to be determined by an application of the law to the facts proved. (*People* v. *Hubert,* 251 Ill. 514.) In civil cases, in which the court may direct a verdict for either party, the one considering himself aggrieved by the direction has a right of review, while in a criminal case, if the court should direct a verdict of not guilty, the people would have no remedy however serious and prejudicial the error of the court. If the same rule is to apply as in civil cases, the court should have power to direct a verdict of guilty in a case where, as a matter of law, the evidence requires such a verdict, and in Arkansas, if, as a matter of law, the evidence requires such a verdict, such a direction may be given. (*Paxton* v. *State,* 114 Ark. 393; *Bobs* v. *State,* 105 id. 462.) In Michigan it was decided in the case of *People* v. *Worges,* 176 Mich. 685, that where the evidence justifies a conviction the court may tell the jury that they should have no difficulty in reaching a conclusion that the defendant is guilty, which amounts to a direction for such a verdict. Such a practice would not be approved here. If the evidence is such that the court does

277 — 40

not regard it as sufficient to sustain a conviction it is proper to so advise the State's attorney for the exercise of his official judgment and discretion, in view of the certainty that a verdict of guilty, if returned, will be set aside, but such a motion as was made should not be entertained.

It is contended that the verdict of the jury was contrary to the evidence, but we do not so regard it. The defendant and Piniaszek were friends, and there was not only an absence of any motive for making a false charge against the defendant, but no circumstances appear from which it can be inferred that the account given by Piniaszek was not true, while the defendant was impelled by the strongest motive to deny the charge. The fact that there was only one witness testifying to the commission of the crime, and that he was contradicted by the defendant, is not, alone, sufficient to justify a reversal.

It is further argued that the money was not obtained by means of the confidence game but was obtained by the use of a trick or device constituting a crime under another section of the Criminal Code. The same act may constitute, in law, different offenses. (*VanEyck* v. *People,* 178 Ill. 199; *Nagel* v. *People,* 229 id. 598; *People* v. *Nall,* 242 id. 284.) In this case the element of confidence in the ability of Kaminski to make money was present and was created by the defendant as an accessory before the fact.

It is assigned for error that the court refused to give instructions 12, 13, 14 and 15 tendered by the defendant, with the suggestion that in view of the evidence in the case the instructions should have been given so that the jury might be enlightened on the matters therein set forth. There is no further argument concerning them but counsel is content with this statement: "We do not cite any authorities in support of this assignment of error because we are inclined to think that the instructions properly present the law in the case." The assignment of error might

be disregarded, but upon looking at the instructions we find that they were properly refused. The law as stated in instruction 12 was given to the jury in other instructions. It stated that the jury had no right to disregard the testimony of the defendant from bias or prejudice or because he was the defendant charged with the commission of a crime, but it was their sworn duty to impartially consider his testimony together with all the other evidence in the case, and this was followed by the doctrine of reasonable doubt. Instruction 6 given at the instance of the People advised the jury that they had no right to disregard the testimony of the defendant merely because he was accused of crime, and that his credibility was to be put to the same tests as are legally applied to any other witness. Instruction 10 given at the request of the defendant advised the jury that to warrant the conviction of the defendant he must be proved to be guilty so clearly and conclusively that there was no reasonable theory, based upon the evidence, upon which he could be innocent when all the evidence in the case was considered together. Instruction 13 stated if the jury could reasonably account for any fact in the case upon a theory or hypothesis which would admit of the defendant's innocence it was their duty to do so, and if they had a reasonable doubt of his guilt, to acquit him. It applied the doctrine of reasonable doubt to any single fact,—not to all the evidence,—and did not state the law. Instruction 14 related to circumstantial evidence and was not applicable to the case, because none of the evidence was circumstantial. Instruction 15 also applied the doctrine of reasonable doubt to any single fact, and the court did not err in refusing it.

The judgment is affirmed.          *Judgment affirmed.*