Keese and Pilgreen *v.* State.

4762                                    265 S. W. 2d 542

Opinion delivered March 8, 1954.

*George F. Edwardes,* for appellant.

. *Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

J. Seaborn Holt, J. By information, appellants were charged jointly under § 41-1811, Ark. Stats., 1947, with the "crime of possessing forged and counterfeited instrument committed as follows, to-wit: The said defendants on the 10th day of July, 1953, in Miller County, Arkansas, did unlawfully, wilfully and feloniously, falsely and fraudulently have and keep in their possession divers false, forged and counterfeited checks and drafts and fictitious instruments purporting to be checks, etc."

Trial resulted in a verdict finding both guilty and leaving the punishment to be assessed by the Court. Pilgreen was adjudged to serve three years in the Boys' Industrial School, and Keese, three years in the State Penitentiary. From the judgment is this appeal.

Appellants first question the sufficiency of the evidence and their conviction under the above section of the statute, which provides in material part. "Whoever shall fraudulently keep in his possession or conceal the counterfeit resemblance or imitation of any bank bill, note, check, or draft, or any instrument which circulates as currency, of any corporation, company or person that exists, or may exist, whether such bill, note, check, draft or instrument be complete and filled up, or otherwise, or shall fraudulently keep in possession or conceal any fictitious instrument, purporting to be a bank bill, note, check or draft of any corporation, company or person, whether the same be filled up and complete or not, . . . or shall fraudulently . . . offer to pass, or assist, or be concerned in fraudulently buying, paying, or tendering in payment, altering or passing any such bill, note, draft, check . . ., shall be imprisoned in the penitentiary not less than three (3) nor more than ten (10) years."

After reviewing all the testimony, we have concluded that it was substantial and sufficient to support the jury's finding that appellants were guilty of the crime charged.

The record reflects that on July 10, 1953, appellant, Keese, entered the Belk-Jones Store in Texarkana and presented to the cashier a check for payment in the amount of approximately $71, drawn on the State National Bank, and signed "Willie Ray Smith" and payable to "George F. Norris." The cashier referred Keese to Mr. Jester, an employee whose duty was to approve checks. When Keese asked Jester to approve the check, Jester then telephoned the bank and was informed that the amount of the check was all right. Thereupon, Keese tore up the check and left the store. Jester, at once, notified the police, and together with another employe, Heflin, went out on the street to search for the pieces of the check, but none was found. Thurman Conley, an acquaintance of Pilgreen, at the time was sitting in a car in the same block in which the store was located. Pilgreen entered Conley's car, removed a check from his billfold and placed it "under the dash of my car." Conley overheard Jester say he was looking for a check, so he, Conley, removed the check that Pilgreen had placed under the dashboard, followed Jester and Heflin, and gave the check to Heflin. The check was as follows: "Texarkana, Arkansas, July 10th, 1953—THE STATE NATIONAL BANK of Texarkana—Pay to George F. Norris or bearer $71.50—Seventy-one and fifty cents— Dollars—Willie Ray Smith."

Heflin testified, in effect, that after he and Jester returned to the store and Conley delivered to him the check, copied above, he turned it over to the Police Department.

Deputy Sheriff Johnson testified that while Keese was in jail July, 1953, he obtained specimens of his handwriting, "I had him write Willie Ray Smith, Bill Keese, and the name, George F. Norris and also some dates, and the figures seventy-one fifty cents. . . . Did you advise him at the time that he did not have to do that? A. I don't believe I did. Q. In what manner did you obtain that specimen of his handwriting, did you ask him to do it? A. I had these names that were on this check and I asked him if he would write those names on this paper

for me and he did. Q. He agreed to do so? A. Yes, he raised no objections to it.'' These specimens were introduced in evidence.

Mr. Jones, head bookkeeper of the State National Bank, testified that he had had eight years of examining handwriting for the bank, that he was familiar with the handwriting of Willie Ray Smith, and that the signature of the above check (which check was introduced in evidence) was not Smith's signature and that the handwriting on the above check and the specimens procured by Officer Johnson were, in his opinion, written by the same person.

Willie Ray Smith testified that the signature on the above check was not his, and that he did not authorize any one to sign his name to it.

At the time the torn up check was presented by Keese at the store, he, Smith, had an account in the State National Bank.

We think the above testimony shows a definite plan and chain of events and acts connecting appellants with the crime charged and sufficient to establish their guilt.

The above statute makes it a crime for one to have in possession, with intent to defraud the ''counterfeit resemblance or imitation of any . . . check, . . . that exists, or may exist,'' or to pass or to offer to pass such check, ''or be concerned in . . . tendering in payment . . . or passing any such . . . check.''

We think it obvious that under the plain terms of the above section, it was designed to apply not only to bank notes and currency, but also to the ordinary bank check, which is ''a written order or request, addressed to a bank or persons carrying on the business of banking, by a party having money in their hands, desiring them to pay, on presentment, to a person therein named or bearer, or to such person or order, a named sum of money.'' *Bouvier's Law Dictionary*, Vol. 1, page 475.

The evidence shows that appellants had in their possession two forged, fictitious and fraudulent checks, the

one that Keese tore to pieces in the store and the one left by Pilgreen in Conley's car, which was introduced in evidence. These two checks were practically identical in all essential parts.

We do not agree with appellants' contention that the above section, "was designed only 'to protect banks and to prevent people from possessing anything that was designed to circulate as currency, and a check drawn by an individual upon a bank is not such an instrument as included in the original statute.' " Had the Legislature intended such a narrow and strained construction, it could easily have said so.

A directed verdict for appellants was properly refused since the evidence was sufficient to show a violation of the above statute. "The trial judge may direct a verdict only where the evidence raises no material question of fact for the jury's determination." *Paxton* v. *State,* 114 Ark. 393, 170 S. W. 80, and *Ruffin* v. *State,* 207 Ark. 672, 182 S. W. 2d 673.

Appellants also say that the court erred in refusing their request for a severance. This contention is untenable for the reason that our statute, § 43-1802, Ark. Stats., 1947, provides: "When two (2) or more defendants are jointly . . . indicted for a felony less than capital, defendants may be tried jointly or separately, in the discretion of the trial court."

"The granting of a severance is within the sound discretion of the trial court." *Nolan and Guthrie* v. *State,* 205 Ark. 103, 167 S. W. 2d 503. Its action will not be disturbed, absent evidence indicating abuse of discretion.

We find no abuse of discretion here.

Appellants next argue "that the court erred in refusing to discharge the jury panel and in ordering the defendant, Doyle Pilgreen, into a trial during the same week that he had already been previously tried and committed, and this error was aggravated by the fact that it was known to the jury that tried him in the instant case,"

and that they were denied a fair and impartial trial. We do not agree.

The record reflects that Pilgreen had been tried for some offense during the same week in which both appellants were jointly tried in the present case and that jurors, Roberts and Crank, (of the regular panel) knew of such trial. Whether Pilgreen was found guilty or acquitted, or on what charge, is not disclosed. While the jurors were being questioned on *voir dire,* the record shows: ''By MR. EDWARDES: (Questioning the panel as a whole) Gentlemen, have any of you heard of any case in this court at this term involving these defendants or either of them? (Thereupon, two jurors indicated that they had, said jurors being Buron Roberts and G. W. Crank, Jr.) Q. Did either of you hear the trial of that case? A. No, sir. (Both jurors answered in the negative). Q. Mr. Buron Roberts, I believe you were present when the jury was selected in the other case against Doyle Pilgreen? A. Yes, sir. . . . Now, all you members standing know that there was another case here against the defendant, Doyle Pilgreen—is there any one of you that doesn't know it? A. I have heard the name mentioned is all I know about it. Q. You are Mr. Buron Roberts? A. Yes, sir. Q. Is there any one still standing that was on the other jury that tried Doyle Pilgreen? (There was none indicated). Q. It has come to your attention during the court's examination of the jury that there was another case here; all of you understand that now? BY THE COURT: . . . In the court's qualifying this jury to serve on this case, no mention was made of any other case. . . . This jury panel has been examined fully, and they were asked that all who had served on any case in which either of these boys were involved would please be seated and they did, and so far as information being conveyed to these jurors, it could have been either of these defendants.''

At this point, appellants moved that the court discharge the entire panel for the reason that it had come to the jurors' attention that there was another criminal charge against Pilgreen. The court overruled this mo-

tion with this statement: "The motion will be overruled for the reason that the jury has been fully interrogated about their knowledge of this case which is being tried now, and as to whether or not they could give the defendant a fair and impartial trial, based upon the law and the evidence in this case, and all have answered that they can and will do that."

Section 43-1911, Ark. Stats., 1947, provides: "A challenge to the panel shall only be for substantial irregularity in selecting or summoning the jury, or in drawing the panel by the clerk." *Shockiey* v. *State,* 199 Ark. 159, 133 S. W. 2d 630.

It appears that the jurors that tried appellants all answered, when examined, that they could, and would, give them a fair and impartial trial. Appellants did not exhaust their statutory rights of peremptory challenges. In fact, it does not appear that they made any such challenges at all.

The rule announced in *Wiley* v. *State,* 191 Ark. 274, 86 S. W. 2d 13, is applicable here. We there said: "Section 3152 of Crawford & Moses' Digest (now § 43-1911, Ark. Stats., 1947) provides: 'A challenge to the panel shall only be for substantial irregularity in selecting or summoning the jury, or in drawing the panel by the clerk.' The plain language of this section of the statutes is such as to exclude prejudice of the panel as cause for challenge thereto. This section of the statutes prescribes the only causes for which a jury panel may be excused, and therefore excludes all other causes not within its terms. Moreover, the record does not reflect that appellant exhausted or even exercised any of his statutory rights of peremptory challenges to relieve against the condition complained of; therefore, under repeated opinions of this court, he is in no position to urge this contention. *Hooper* v. *State,* 187 Ark. 88, 58 S. W. 2d 434."

We hold, therefore, that this assignment is without merit.

Appellants say that "the court erred in overruling the defendants' motion to require the prosecution to elect upon the specific charge that they would proceed, and in ruling that the information was not duplicitous."

The answer to this contention is that the record is silent as to any motion or ruling of the court referred to by appellants or whether any objections were made and exceptions saved. This assignment, therefore, comes too late and cannot be considered.

" 'On appeal from the circuit court, this court only reviews errors appearing in the record. The complaining party must first make an objection in the trial court, and this calls for a ruling on his objection. An exception must then be taken to an adverse ruling on the objection, which "directs attention to and fastens the objection for a review on appeal." The matters complained of, together with the objections and the exceptions to the ruling of the court, must be brought into the record by a bill of exceptions; and the motion for a new trial can serve no other purpose than to assign the ruling or action of the court as error.' " *Yarbrough* v. *State,* 206 Ark. 549, 176 S. W. 2d 702.

Appellants next argue that the court erred in admitting the check introduced herein (and set out above) for the reason that it was not identified and traced to appellants, and permitting the introduction of evidence of other checks.

We hold this contention untenable.

As we have indicated, the check introduced in evidence above was sufficiently identified and traced to appellants. It was similar in every material respect to the one that was destroyed by Keese and the evidence showed that both checks were written by the same person, Keese. As to the alleged admission in evidence of a check other than the evidence relating to the two checks above, the record shows in the direct examination of Willie Ray Smith, the following: "By Mr. Lookadoo: Q. I hand you here another check in the sum of eighteen fifty ($18.50), and I want to ask you if that is your

signature? A. No, sir. BY MR. EDWARDES: I want to object. They are referring to a check that is not referred to in the information, and has not been referred to at any time. I don't know what they are talking about and it is improper. * * * BY THE COURT: The court has no way of knowing whether it is or not. I don't know what it is. You may proceed. * * * BY MR. LOOKADOO: Q. What is the date of that check? A. July 9th. Q. That was drawn on the State National Bank? A. Yes, sir. Q. And that is not your signature? A. It is not. BY MR. EDWARDES: Are you seeking to offer it in evidence? BY MR. LOOKADOO: I will be glad to introduce it. BY MR. EDWARDES: I am not asking you to and I object. BY THE COURT: Is there anything further? BY MR. LOOKADOO: No, sir. BY THE COURT: He says he is through with the witness and it hasn't been offered in evidence. BY MR. EDWARDES: I have no questions.''

The information here charged appellants with falsely and fraudulently keeping in their possession divers false, forged and counterfeited checks, etc. and this evidence was properly offered by the State to show criminal intent, design, or part of a common scheme or plan of appellants.

'' 'The evidence of the commission of other crimes of a similar nature about the same time, however, tends to show the guilt of the defendant of the crime charged when it discloses a criminal intent, guilty knowledge, identifies the defendant, or is part of common scheme or plan embracing two or more crimes so related to each other that the proof of one tends to establish the other.' '' *Puckett* v. *State,* 194 Ark. 449, 108 S. W. 2d 468.

Next appellants say that the court erred ''in charging the jury, * * * that in the event they could not agree upon the punishment herein that if they returned a verdict of merely finding the defendants guilty that the court would fix the punishment.''

There is no merit to this assignment. In its instruction No. 7, the court told the jury ''if you find

the defendants guilty beyond a reasonable doubt and cannot agree as to the amount of punishment, then you may, if you desire to do so, return into court a verdict of guilty and the court will fix the amount of punishment. However, if it is possible to do so, should you find them guilty, you should also fix the amount of punishment. A finding of guilty, however, must be beyond a reasonable doubt as the court has instructed you.''

This was a correct instruction under § 43-2306, Ark. Stats. 1947.

''There was no error in instructing the jury before it retired that if they found the defendant guilty and could not agree on the punishment to be imposed they might, under § 4070, Pope's Digest, (now § 43-2306 Ark. Stats. 1947) leave fixing the punishment to the court.'' *Knighten* v. *State,* 210 Ark. 248, 195 S. W. 2d 47, (Headnote 3).

Finally, appellants argue that ''taking specimens of handwriting from the accused, Bill R. Keese, by the officer, Tillman Johnson, violated the constitutional rights of the appellant, Bill R. Keese.''

This alleged error is without merit for the reason that it was not incorporated in appellants' motion for a new trial and under our long established rule, we must regard it as having been waived.

''It is a well established rule of practice that, where there is a motion for a new trial, such previous exceptions as are not incorporated in the motion, must be regarded as having been waived.'' *Collier* v. *State,* 20 Ark. 36, (Headnote). *Havens* v. *State,* 217 Ark. 153, 228 S. W. 2d 1003.

We point out, however, that had this alleged error been properly brought forward, it would have availed appellants nothing for the reason that Keese voluntarily gave specimens of his handwriting, freely and without coercion or threat, and this evidence was properly admitted. *State* v. *Browning,* 206 Ark. 791, 178 S. W. 2d 77.

**Affirmed.**