681 P.2d 1388

**The STATE of Arizona, Appellee,**

v.

**Manuel Romero GONZALES, Appellant.**

**No. 2 CA–CR 2776.**

Court of Appeals of Arizona,
Division 2.

May 26, 1983.

Rehearing Denied Sept. 30, 1983.

Review Granted Oct. 18, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Frank P. Leto, Deputy Public Defender, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

The appellant, Manuel Romero Gonzales, was charged with kidnapping, sexual assault and unlawful imprisonment. He was found guilty only of unlawful imprisonment and placed on probation for three years.[1] The sole issue on appeal is whether the trial court erred by precluding the appellant's expert witness testimony concerning his low intelligence. We affirm.

During the evening of November 30, 1980, the victim left a bar and accompanied three men, one of whom was the appellant, to the appellant's apartment. She testified that all three men sexually assaulted her. The appellant testified that he was in the bathroom, heard a scream, saw the victim being sexually assaulted, but stayed in the bathroom until the incident was over. He then came out and kissed the victim who bit his tongue. The appellant stayed with the victim after the other men left and eventually gave the victim a pair of his pants to wear home since she could not find her own. Following his arrest, the appellant lied to the police concerning his whereabouts on the evening of the assault.

After an initial determination of incompetence, the appellant was later found competent to stand trial. The trial court granted the state's motion in limine to suppress expert witness testimony regarding the appellant's low intelligence.

The expert witness offered was a psychologist who would testify that the appellant's IQ was 55 and he was mildly mentally retarded. In addition the appellant's offer of proof showed the expert would testify the appellant had an organic brain syndrome which impaired his cognitive function and affected his ability to reason and exercise judgment. Although finding a logical relevance between the appellant's intelligence and his credibility, the trial court found the probative value of such evidence was outweighed by the danger of unfair prejudice, confusion, and delay in time.

The appellant contends on appeal that expert witness testimony concerning his low intelligence is admissible as evidence relevant to his credibility under Rule 401 and 402, Arizona Rules of Evidence, 17A A.R.S.[2] The implication is that a simple-minded person might lie to the police concerning his whereabouts at the time of the crime out of confusion rather than an attempt to cover up his guilt, and that slowness to respond to questions in court and failure to look up or at the jury during trial might result from low intelligence rather than consciousness of guilt. Thus, the appellant maintains that evidence regarding his low intelligence is relevant to a proper understanding of his demeanor.

The appellee counters that there is no correlation between a person's intelligence and his honesty, and, thus, evidence of low intelligence is irrelevant in assessing credibility.

We note initially that the trial court has wide discretion regarding relevancy and admissibility of evidence. Its decision will not be overturned on appeal absent an abuse of discretion. *See State v. Mincey*, 130 Ariz. 389, 636 P.2d 637 (1981), cert. denied, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982). We also note that the appellant makes no claim of insanity or that he was incapable of forming any necessary intent. The question is simply the bearing of low intelligence on credibility.

■ As a general rule, expert witness testimony concerning low mental compre-

---

1. He was in custody 478 days pending trial and was given "credit" for that time.

2. Rule 401 states: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Rule 402 states: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of Arizona or by applicable statutes or rules. Evidence which is not relevant is not admissible."

hension is rejected, absent a showing of some abnormal condition of the mind caused by disease or habits, although admissibility is a matter within the sound discretion of the trial judge. *See Mangrum v. State,* 227 Ark. 381, 299 S.W.2d 80 (1957); *see also* Annot. 20 A.L.R.3d 684, 707 (1968).

One case going against the general trend is *State v. Armstrong,* 232 N.C. 727, 62 S.E.2d 50 (1950), in which the North Carolina Supreme Court allowed expert witness testimony regarding low intelligence to impeach the credibility of a witness. The court stated:

"What could be more effective for the purpose than to impeach the mentality or the intellectual grasp of the witness? If his interest, bias, indelicate way of life, insobriety and general bad reputation in the community may be shown as bearing upon his unworthiness of belief, why not his imbecility, want of understanding, or moronic comprehension, which go more · directly to the point?" 232 N.C. at 728, 62 S.E.2d at 51.

The majority of courts answer the question posed by the North Carolina court by leaving the admissibility of such evidence to the sound discretion of the trial court which is in a better position to judge whether such testimony presents an undue delay or waste of time since the jury may be able to accurately weigh the witness' credibility or lack thereof without the extra testimony. *See Mangrum v. State, supra; Criglow v. State,* 183 Ark. 407, 36 S.W.2d 400 (1931); *State v. Abbott,* 113 Neb. 517, 204 N.W. 74 (1925), modified on other grounds on reh'g, 113 Neb. 524, 206 N.W. 153 (1925). In the present case, both counsel discussed in opening statements the effect of the appellant's demeanor and low intelligence on his credibility.

As the Supreme Court of Arkansas noted in *Mangrum v. State, supra:*

"We agree that evidence may be offered to the jury regarding the insanity of a witness or mental delusions that a witness may suffer. This is because a witness may testify ever so brilliantly to the jury, and yet his insanity or mental delusions may not appear. But, when we come to the question of whether a witness has low mental comprehension—absent, as here, any claim of insanity or mental delusions—it seems that the trial judge should have discretion to decide whether the trial should be prolonged by calling witnesses to give their opinions to the jury, or whether the matter is sufficiently clear for the jury to intelligently determine credibility without the trial being prolonged by such testimony as to the mental comprehension of another witness." 227 Ark. at 389, 299 S.W.2d at 84–85.

We agree and hold that the trial court did not abuse its discretion by precluding the expert witness testimony concerning the appellant's low intelligence.

■ Aside from the unnecessary delay that expert witness testimony would have caused in this case, the trial court could have reasonably concluded that the jury could accurately judge the credibility of the appellant without additional evidence concerning his intelligence. In addition, the trial court properly exercised caution by precluding the expert testimony due to the potential for prejudice if the jury were to conclude, based on that testimony, that the appellant was not smart enough to know what he was doing. The danger is that the jury might use such testimony in weighing the appellant's guilt not just his credibility. Such prejudicial, confusing, and misleading evidence, even if relevant, may be excluded under Rule 403, Arizona Rules of Evidence, 17A A.R.S.

■ The appellant also argues that the expert witness testimony regarding low intelligence is admissible as evidence of a pertinent character trait under Rule 404(a)(1), Arizona Rules of Evidence, 17A A.R.S. We disagree. The appellant cites no authority for this proposition. The appellant does cite Webster's New Collegiate Dictionary (1973) and Webster's Third International Dictionary (1971) to the effect that a character trait is any mental or ethical trait that individualizes or distin-

guishes one person from another. We prefer a definition more in line with the thrust of Rule 404, Arizona Rules of Evidence, 17A A.R.S., i.e., those traits of character which bear on the probability that the accused has or has not committed a particular crime. Moral and ethical attributes rather than degree of intelligence are indicators of criminal proclivity. Black's Law Dictionary defines character as the aggregate of the moral qualities which belong to and distinguish an individual person. Arizona courts have consistently applied this definition, based on morality, in applying Rule 404. *See e.g., State v. Jessen*, 130 Ariz. 1, 633 P.2d 410 (1981) (aggression and association with violent persons as indicative of an aggressive and violent character); *State v. Christensen*, 129 Ariz. 32, 628 P.2d 580 (1981) (acting impulsively is a character trait); *State v. Miller*, 128 Ariz. 112, 624 P.2d 309 (App.1980) (veracity is a trait of character). Even if low intelligence were a character trait, we fail to see how it is relevant to the crimes charged. Evidence of an accused's character and reputation, other than as a witness, is inadmissible unless it relates to a trait of character which makes it probable or improbable that the accused would have done the kind of act which is alleged to have constituted a crime. *Springer v. United States*, 148 F.2d 411 (9th Cir.1945). Low intelligence does not make it more or less probable that the appellant committed the crime of unlawful imprisonment. Neither does increased or diminished credibility, i.e., veracity, constitute a pertinent character trait affecting the probability that the appellant committed the crime. *See State v. Howland*, 157 Kan. 11, 138 P.2d 424 (1943).

We hold that the trial court did not abuse its discretion in precluding the expert witness testimony regarding the appellant's low intelligence.

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.